DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant, Billy J. Peterson, appeals from the decision of the Summit County Court of Common Pleas finding him guilty of one count of robbery. We affirm.
 {¶ 2} On May 26, 2006, Defendant robbed Thirsty's Bar in Akron, taking approximately $200 from the cash box and threatening the bartender with what he insinuated was a gun in his pocket. On August 31, 2006, he waived his right to a jury trial and proceeded with a bench trial. The prosecution called the bartender and the two officers who responded to the call on May 26, 2006. Defendant took *Page 2 
the stand and testified in his own defense. The court found Defendant guilty of robbery, in violation of R.C. 2911.02(A)(3).
 {¶ 3} Defendant timely appeals, raising two assignments of error.
 FIRST ASSIGNMENT OF ERROR "Trial Counsel provided ineffective assistance of counsel by failing to properly prepare for trial in that he failed to subpoena witnesses that would have corroborated [Defendant's] version of events including, but not limited to the interaction of the patrons including [Defendant], the time spent in the bar, the order of the departure of the patrons, and the time of [Defendant's] departure."
 {¶ 4} Defendant contends that his trial counsel was ineffective because he failed to subpoena witnesses, and one witness in particular, who could corroborate Defendant's version of the events of May 26, 2006.
 {¶ 5} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. McMann v.Richardson (1970), 397 U.S. 759. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 6} An attorney properly licensed in Ohio is presumed competent.State v. Lott (1990), 51 Ohio St.3d 160, 174. The defendant has the burden of proof, *Page 3 
and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy.State v. Smith (1985), 17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *2, citing Strickland, 466 U.S. at 690.
 {¶ 7} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Defendant must prove both deficiency and prejudice, and his failure to prove either is dispositive of his claim of ineffective assistance of counsel.
 {¶ 8} Defendant contends that his trial counsel failed to subpoena a witness to support his version of the events of May 26, 2006. Defendant's contentions that this witness's testimony would have aided him at trial are not sufficient to satisfy his burden. "Speculation is insufficient to establish the requisite prejudice" in an ineffective assistance claim. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 27, citing State v. Stalnaker, 9th Dist. No. 21731, 2004-Ohio-1236, at ¶ 8-10. Defendant has provided no documentation of the witness's proposed testimony, and his argument that the testimony would benefit his defense is based upon mere speculation. *Page 4 
 {¶ 9} Defendant's first assignment of error is without support, and is overruled.
 SECOND ASSIGNMENT OF ERROR "The court's verdict was inconsistent with the evidence at trial in that the evidence was insufficient to support the court's verdict and [Defendant's] conviction for robbery was against the manifest weight of the evidence."
 {¶ 10} Defendant contends that the evidence presented by the prosecution was insufficient for the court to consider, and that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 11} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v.Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins,78 Ohio St.3d at 386.
 {¶ 12} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge Court of Appeals of Ohio, Ninth Judicial District *Page 5 
questions whether the [S]tate has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. CA19600, at *1, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 13} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 14} In this case, Defendant preserved his right to appeal the sufficiency of the evidence by making a motion for acquittal pursuant to Crim.R. 29(A) after the prosecution's case in chief, which he renewed at the close of his case. We find, however, that we do not reach a discussion of the sufficiency of the evidence because the conviction was not contrary to the manifest weight of the evidence, *Page 6 
and that determination is dispositive of the issue of the sufficiency of the evidence. See Roberts, at *2.
 {¶ 15} The state produced three witnesses in its case: the barkeeper who was the victim of Defendant's robbery attempt (Ms. Tudor), and the two Akron Police officers who responded to the call (Officers Edsall and Crockett). Ms. Tudor testified that, on May 26, 2006, Defendant and at least two other patrons were in Thirsty's Bar in the afternoon or early evening, which she estimated to be around 5:00 or 6:00 p.m. She indicated that Defendant was wearing blue sweatpants with white striping, a white t-shirt, and a maroon and gold jacket, which she later testified could have been tan rather than gold. She served Defendant a glass of ice water. At some point, the other patrons left. After they left, she said that Defendant asked her for a free drink, but she refused to give it to him. Shortly thereafter, he left. However, Defendant returned after about half an hour, and approached the bar with his hand in his pocket. He "insinuated" that he had a gun in his pocket, and demanded that she open the till and give him the money. She said that he took all of the quarters and paper money from behind the bar, started to leave, and then turned around and told her not to call the police. She did not do so immediately, and shortly thereafter he returned to the bar and again told her not to call the police. After he left the second time, she went to a neighbor's house to call the police because the pay phone at the bar was not working. *Page 7 
 {¶ 16} The police testified that they arrived on the scene at 8:35 p.m., and within four to five minutes of the call. They testified that Ms. Tudor expressly told them that Defendant had a gun. They also testified that Ms. Tudor had told them that Defendant had left the bar only for a minute before he returned to commit the robbery. The description she gave of Defendant was a 6'4" black man, 250 to 300 pounds, who was bald with a goatee. He was wearing a white tank top and a tan coat with blue sweatpants. A few weeks later, on an unrelated call, the police found Defendant sitting on another person's front porch. He provided them with a false name, but an officer identified him and he was placed under arrest for the robbery at Thirsty's Bar.
 {¶ 17} Defendant testified that he had arrived at Thirsty's at 5:00 p.m. He drank ice water and talked with Ms. Tudor and a patron named Steve, the same man whom Defendant argued would have supported his version of the events. After about half an hour, a patron named Maria left the bar after having drunk several drinks and, as Defendant described it, staggered down the street. He and Steve watched her go. Shortly thereafter, Defendant claimed that he and Steve left the bar together, and parted ways on the street. Defendant said he did not return to the bar that evening. He also testified that he did give his street name to the police when they came to arrest him, but that he never denied that his name was Billy Peterson. *Page 8 
 {¶ 18} Counsel elicited testimony from Ms. Tudor that she had a felony record including aggravated possession of drugs and illegal processing of drug documents. In addition, she testified that she had worked at another of the bars owned by the same man who owned Thirsty's, but she had lost that job after money was missing from the till and she claimed a robbery had occurred. The prosecution was able to elicit testimony from Defendant about his felony record, which included a conviction for abduction.
 {¶ 19} In light of this evidence, we are persuaded that the trier of fact, in this case the trial court judge, did not lose his way in considering the evidence before him. He was in the best position to weigh the credibility of the witnesses before him. See State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. It was not unreasonable for him to conclude that Defendant had committed the robbery. As this determination has disposed of Defendant's claims with respect to the weight of the evidence, we similarly dispose of Defendant's claims regarding the sufficiency of the evidence.Roberts, supra, at *2. Necessarily included in this court's determination that the jury verdict was not against the manifest weight of the evidence is a determination that the evidence was also sufficient to support the conviction. Id. Accordingly, Defendant's second assignment of error is overruled. *Page 9 
 {¶ 20} Both of Defendant's two assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, J., DICKINSON, J. CONCUR *Page 1