DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, G.E.S., appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, overruling G.E.S.'s various objections to the magistrate's decision. This Court affirms.
 I {¶ 2} This appeal stems from an incident occurring on the night of April 14, 2006 and the early morning of April 15, 2006. On the night of April 14, 2006, the victim in this case, R.M., her friend, Samantha B., and her boyfriend, Michael S., arrived at Lucky C.'s apartment in Akron, Ohio. Lucky C. had several other individuals over the apartment, including his coworker Ryan M., Ryan M.'s *Page 2 
girlfriend, Julie M., and another girl, Corrine G. Later that night, Lucky C.'s other coworker, G.E.S., also joined the group at Lucky C.'s apartment. While the events surrounding this incident were highly contested and are explored in detail below, this appeal revolves around R.M.'s claim that G.E.S. raped her after she drank too much at Lucky C.'s apartment.
 {¶ 3} On August 22, 2006, G.E.S. was charged with sexual battery pursuant to R.C. 2907.03, a felony of the third degree. The charges stemmed from conduct that occurred on or about April 15, 2006. The matter went to trial before a magistrate on May 2, 2007. On May 23, 2007, the magistrate issued her findings of fact and conclusions of law, finding that G.E.S. had committed the offense of sexual battery. The magistrate further ordered that the matter be set for a dispositional hearing before her on July 12, 2007.
 {¶ 4} On June 1, 2007, G.E.S. filed a motion to set aside the magistrate's order pursuant to Juv. R. 40(D)(2). On June 6, 2007, G.E.S. also filed objections to the magistrate's decision pursuant to Juv. R. 40(D)(3). G.E.S. did not file a trial transcript along with his objections because the court reporter had not yet finished transcribing them. Subsequently, the State filed a motion to strike one of G.E.S.'s objections because it raised an ineffective assistance of counsel claim and cited to evidence outside of the record to support that claim. On July 5, 2007, G.E.S. filed supplemental objections, which included the completed trial transcript. On July 12, 2007, the trial court issued its decision, overruling G.E.S.'s objections and *Page 3 
finding him to be a delinquent child pursuant to his commission of the offense of sexual battery.
 {¶ 5} On August 14, 2007, G.E.S. came before the magistrate again on his dispositional hearing. On August 20, 2007, the magistrate issued her order, committing G.E.S. to the department of youth services for a minimum of six months. That same day, the trial court issued its order adopting the magistrate's decision and ordering the same disposition. On August 24, 2007, G.E.S. filed objections to the magistrate's disposition, arguing that it was against the weight of the evidence and constituted excessive punishment. After a hearing on G.E.S.'s objections and separate motion for judicial release, the trial court overruled G.E.S.'s objections on November 5, 2007. On November 15, 2007, G.E.S. filed his notice of appeal.
 {¶ 6} G.E.S. has timely appealed from the trial court's decision, adopting the magistrate's order. G.E.S.'s appeal raises six assignments of error for our review, several of which we rearrange for ease of analysis.
 II Assignment of Error Number One "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING [G.E.S.]'S OBJECTIONS TO THE MAGISTRATE'S DELINQUENCY ADJUDICATION AS THE MAGISTRATE INCORRECTLY APPLIED ORC 2907.03 TO HER FINDINGS OF FACT IN ADJUDICATING [G.E.S.] DELINQUENT AND/OR BECAUSE THE MAGISTRATE'S FINDINGS OF FACT DID NOT SUPPORT A FINDING THAT [G.E.S.] VIOLATED ORC 2907.03." *Page 4 
 {¶ 7} In his first assignment of error, G.E.S. argues that the trial court abused its discretion in adopting the magistrate's delinquency adjudication because the magistrate's order did not contain a finding "that [G.E.S.] had committed each of the elements required to sustain a conviction for Sexual Battery[.]" Specifically, G.E.S. argues that the magistrate's order failed to include a finding that G.E.S. possessed the requisite mens rea at the time of the alleged sexual battery.
 {¶ 8} In reviewing G.E.S.'s objections, the court below conducted an independent review of the record pursuant to Juv. R. 40. See Juv. R. 40(D)(4)(d) ("In ruling on objections, the court shall undertake an independent review as to the objected matters[.]"). This Court has previously set forth its standard of review in appeals from a trial court's independent review and adoption of a magistrate's decision as follows:
 "When reviewing an appeal from a trial court's adoption of a magistrate's decision under Juv. R. 40, we must determine whether the trial court abused its discretion in adopting the decision. An abuse of discretion is more than an error of judgment, but instead demonstrates perversity of will, passion, prejudice, partiality, moral delinquency, or an arbitrary, unreasonable, or unconscionable attitude. Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision. Consequently, the focus in this assignment of error is on the trial court's actions and not the actions of the magistrate." (Internal citations and quotations omitted.) In re Woodburn (Jan. 2, 2002), 9th Dist. No. 20715, at *2.
In G.E.S.'s case, the trial court adopted the magistrate's adjudication of G.E.S. as a delinquent based on his committing sexual battery pursuant to R.C. 2907.03. *Page 5 
 {¶ 9} R.C. 2907.03 provides, in relevant part, that:
 "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 "* * *
 "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 10} G.E.S. argues that the trial court erred in adopting the magistrate's decision because of the following language contained in that decision:
 "The Court finds that the State has proven all of the elements of the offense of Sexual Battery beyond a reasonable doubt. [G.E.S.] had sexual intercourse with [R.M.] that night, but it was not consensual. The Court finds that [G.E.S.] knew or had reason to believe that [R.M.]'s ability to appraise the nature of her conduct or to control her conduct was substantially impaired." (Emphasis added.)
G.E.S. avers that a sexual battery conviction must rest upon a finding that the defendant knowingly committed the crime and that the magistrate's inclusion of the language "or had reason to believe" demonstrates that the magistrate found G.E.S. guilty based on a lesser degree of culpability than the statute requires. G.E.S. further avers that he suffered direct prejudice as a result of the magistrate's *Page 6 
error because the facts in the record would not support a finding that he knowingly committed sexual battery.
 {¶ 11} Even if we were to agree that the magistrate erred in phrasing her mens rea determination in the alternative, this Court must focus on the decision of the trial court, not the magistrate. See In reWoodburn at *2. The trial court's decision, adopting the magistrate's decision, spans forty-one pages and thoroughly analyzes the facts and the law in G.E.S.'s case. Importantly, the trial court order includes the following language:
 "From this evidence, the Court finds that the State proved beyond a reasonable doubt that [G.E.S.] engaged in sexual intercourse with an intoxicated female and that [G.E.S.] knew that [her] inability to appraise the nature of or control over her own conduct was substantially impaired. * * * The Court finds that there is sufficient testimony to establish that [G.E.S.] * * * acted with the culpability required to satisfy the definition of Sexual Battery under R.C. § 2907.03." (Emphasis added.)
The trial court did not phrase its mens rea determination in the alternative. The record reflects that the trial court based its decision on an independent review of all of the evidence from G.E.S.'s trial, including the trial transcripts. See Juv. R. 40(D)(4)(d). Consequently, G.E.S. has not suffered prejudice as a result of any error in the magistrate's order because the trial court specified that the State met its burden on each element of sexual battery, including the mens rea element. See In re Woodburn at *2 (noting that "[a]ny claim of trial court error must be based on the actions of the trial court"). G.E.S.'s first assignment of error lacks merit.
 Assignment of Error Number Two *Page 7 "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING [G.E.S.]'S OBJECTIONS TO THE MAGISTRATE'S DECISION AS THE MAGISTRATE ERRED BY DENYING [G.E.S.]'S MOTION TO DISMISS THE COMPLAINT[.]"
 {¶ 12} In his second assignment of error, G.E.S. argues that the trial court erred in overruling his objection to the magistrate's denial of his motion to dismiss. Specifically, he argues that he was not adequately notified of the charges against him because the State failed to include in the following items in the complaint: (1) the specific subsection of the sexual battery statute it sought to prosecute him under; and (2) the mens rea element of his alleged offense and the facts necessary to sustain such a conviction. We disagree.
 {¶ 13} Juv. R. 22(D)(2) permits a juvenile to raise a defense or objection based on defects in the complaint and parallels Crim. R. 12(C)(2). Both provisions provide that a complaint's failure "to charge an offense" is one such defense or objection that a defendant may raise. See Juv. R. 22(D)(2); Crim. R. 12(C)(2). "The denial of a pretrial motion pursuant to [Juv. R. 22(D)(2)] is a matter within the trial court's discretion." State v. Dunning, 9th Dist. No. 06CA0087-M, 2007-Ohio-7039, at ¶ 6. Accordingly, we can only reverse the denial of a motion to dismiss upon a finding that the trial court abused its discretion. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, *Page 8 
this Court may not substitute its judgment for that of the trial court.Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 14} G.E.S. relies upon Juv. R. 10(B), R.C. 2152.021(A)(1), and the Fifth District's decision in Matter of Coen (June 14, 1995), 5th Dist. No. 94AP090060, to support his argument that his complaint was deficient.[1] Juv. R. 10(B) provides, in relevant part, that:
 "(B) The complaint, which may be upon information and belief, shall satisfy all of the following requirements:
 "(1) State in ordinary and concise language the essential facts that bring the proceeding within the jurisdiction of the court, and in * * * delinquency proceedings, shall contain the numerical designation of the statute * * * alleged to have been violated[.]"
Similarly, R.C. 2152.021(A)(1) provides that a "[delinquency] complaint shall allege the particular facts upon which the allegation that the child is a delinquent child * * * is based." Since both provisions contain virtually identical requirements, we find that a conclusion that G.E.S.'s complaint satisfies *Page 9 
Juv. R. 10(B) also will suffice to satisfy the requirements of R.C. 2152.021(A)(1).
 {¶ 15} In Matter of Foster (May 13, 1998), 9th Dist. No. 97CA006766, at *2-3, this Court considered the question of whether a delinquency complaint must contain the specific subsection of a statute under which the State intends to proceed. We acknowledged the constitutional due process rights to which juveniles are entitled and noted the importance of providing a juvenile with a complaint that performs its "essential purpose of notifying [him] of the offense with which he was charged[.]"Foster at *2, quoting State v. Mays (1995), 104 Ohio App.3d 241, 243. In comparing the notice requirements of Juv. R. 10(B) to Crim. R. 7(B), however, we held that "[a] delinquency complaint need not conform to a hypertechnical requirement not required by the function and purpose of a delinquency complaint and not required for an indictment or complaint against an adult." (Internal quotations omitted.) Foster at *2, quotingIn re Howard (1987), 31 Ohio App.3d 1, 3. Consequently, a complaint in a juvenile delinquency proceeding need not specify the exact numerical designation of the statutory subsection under which the State intends to proceed so long as a reasonable, ordinary person would understand the charges against him, based on the language in the complaint.Foster at *3 (finding that complaint satisfied due process standards when only one statutory subsection contained nearly the exact language used in the complaint). *Page 10 
 {¶ 16} The complaint against G.E.S. contained the following language:
 "[O]n or about the 15th day of April, 2006, in the City of Akron, County of Summit, State of Ohio, he did engage in vaginal/penile intercourse with intoxicated female juvenile, who was impaired which acts are sufficient to establish the elements of sexual battery, in violation of Ohio Revised Code Section(s) 2907.03, a felony of the F3 (sic) degree if committed by an adult[.]" (Emphasis added.)
R.C. 2907.03(A) contains twelve subsections, a violation of any of which would support a sexual battery conviction. R.C. 2907.03(A)(2), however, is the only subsection that uses the phrase "impaired." See R.C. 2907.03(A)(2) (prohibiting an offender from engaging in sexual conduct with a person whose "ability to appraise the nature of or control [their] own conduct is substantially impaired"). While the State might have done well to articulate the charge against G.E.S. with a bit more clarity, we cannot say that a reasonable, ordinary person would fail to understand the charge against him based on the use of the word "impaired" in the complaint. See Foster at *3. Thus, the trial court did not abuse its discretion in overruling G.E.S.'s objection to the magistrate's denial of his motion to dismiss based on the State's omission of the exact numerical designation of R.C. 2907.03 in the complaint.
 {¶ 17} Next, we must consider G.E.S.'s argument that his complaint was defective because it failed to include the mens rea element of his alleged crime. Crim. R. 7(B) requires an indictment to contain, "words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." However, Juv. R. 10(B) only requires a juvenile complaint to contain *Page 11 
the "essential facts" and "numerical designation of the statute" at issue. Unlike the Criminal Rules, the Juvenile Rules do not specify that a complaint must list each and every element of the offense. Moreover, G.E.S.'s complaint listed a numerical designation, R.C. 2907.03, which we have already determined referred to subsection (A)(2). R.C. 2907.03(A)(2) prohibits an offender from engaging in sexual conduct if he "knows" the other person's ability to control their conduct is substantially impaired. Accordingly, the statutory subsection under which the State charged G.E.S. contained the mens rea element applicable to his offense even though the complaint did not. Based on the particular facts and statute involved in this case, we cannot conclude that the trial court abused its discretion in determining that the complaint sufficiently notified G.E.S. of the charges against him. G.E.S.'s second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT ERRED TO THE PREJUDICE OF [G.E.S.] BY OVERRULING [G.E.S.]'S OBJECTIONS TO THE MAGISTRATE'S DECISION IN PART BECAUSE THE MAGISTRATE ABUSED HER DISCRETION BY NOT PERMITTING [G.E.S.]'S MOTHER, NANCY S., TO TESTIFY AT THE TRIAL OF THE WITHIN MATTER[.]"
 {¶ 18} In his third assignment of error, G.E.S. argues that the trial court erred in overruling his objections to the magistrate's decision because the magistrate abused her discretion in refusing to allow G.E.S.'s mother to testify. Specifically, G.E.S. argues that his mother should have been allowed to testify despite the fact that her name never appeared on the defense's witness list. *Page 12 
 {¶ 19} Juv. R. 24 governs the matter of discovery in juvenile proceedings. Juv. R. 24(A) provides, in relevant part, that:
 "Upon written request, each party of whom discovery is requested shall * * * produce promptly * * *:
 "(1) The names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense[.]"
Much like Crim. R. 16, Juv. R. 24 permits a trial court to prohibit a litigant from introducing evidence at trial if he fails to comply with the discovery provisions. Juv. R. 24(C). This is because a trial court possesses broad discretion with respect to the admission of evidence.In re A.R., 9th Dist. No. 22836, 2006-Ohio-1548, at ¶ 5, citingState v. Maurer (1984), 15 Ohio St.3d 239, 265. As such, an appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219.
 {¶ 20} The record reflects that G.E.S. failed to proffer his mother's testimony at trial after the magistrate indicated that she would not be allowed to testify. Although G.E.S.'s brief generally asserts that the exclusion of his mother's testimony offended his due process rights, it also fails to explain exactly what Nancy S. would have testified about. The only statement G.E.S.'s counsel made at trial with regard to Nancy S.'s testimony was that she was "simply a background family witness" and "not a fact witness." G.E.S.'s bare assertion that *Page 13 
his rights were offended does not amount to a showing of prejudice. Without additional information as to the content of Nancy S.'s testimony, we cannot say whether its exclusion prejudiced G.E.S.'s case. Consequently, G.E.S.'s third assignment of error lacks merit.
 Assignment of Error Number Five "THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO [G.E.S.] BY OVERRULING [G.E.S.]'S OBJECTIONS TO THE MAGISTRATE'S DECISION, IN PART BECAUSE THE MAGISTRATE ERRONEOUSLY DENIED [G.E.S.]'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO JUV.R. 29(F) IN VIOLATION OF [G.E.S.]'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE CONSTITUTION OF THE STATE OF OHIO."
 Assignment of Error Number Six "THE TRIAL COURT ERRED TO THE PREJUDICE OF [G.E.S.] BY OVERRULING [G.E.S.]'S OBJECTIONS TO THE MAGISTRATE'S DECISION AS THE MAGISTRATE'S ADJUDICATION OF DELINQUENCY FOR VIOLATING ORC 2907.03 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF [G.E.S.]'S RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 21} In his fifth assignment of error, G.E.S. argues that the trial court erred in overruling his objections to the magistrate's decision because the magistrate's adjudication of delinquency was based on insufficient evidence. Specifically, he argues that there was no evidence that he possessed the requisite *Page 14 
intent to commit sexual battery. In his sixth assignment of error, G.E.S. argues that the trial court erred because the magistrate's adjudication of delinquency was against the manifest weight of the evidence. Specifically, he argues that the State's witnesses were not credible and many of them were biased in favor of R.M. We disagree.
 {¶ 22} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386. *Page 15 
 {¶ 23} In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address G.E.S.'s challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 24} In determining whether a judgment of a juvenile court is against the manifest weight of the evidence, this Court applies the same standard of review as that in the criminal context. In re R.S., R.S.,A.P., and A.G., 9th Dist. No. 21177, 2003-Ohio-1594, at ¶ 10. In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence *Page 16 
weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 25} As set forth above, R.C. 2907.03 provides, in relevant part, that:
 "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 "* * *
 "(2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 26} G.E.S. admits to having sexual intercourse with R.M. during the early morning hours of April 15, 2006. He denies that this encounter amounted to sexual battery, however, because he alleges that R.M. was not substantially impaired during their sexual encounter. Consequently, we confine our analysis to the two issues in dispute: (1) whether R.M. was substantially impaired, and if so, (2) whether G.E.S. knew this when he had sex with her.
 {¶ 27} R.M. testified to the following series of events. After R.M. arrived at Lucky C.'s apartment, she drank approximately four full glasses of vodka. Since she only weighed about ninety pounds, the vodka made her incredibly lethargic and unable to control her bodily movements or to make her own *Page 17 
decisions. From this point forward, R.M.'s recollection suffered. She remembered Ryan M. and G.E.S. carrying her to Lucky C.'s bedroom and laying her on the bed. She also remembered Ryan M. having sexual intercourse with her on the bed while Julie M. lay next to them and cried. At some point later, Ryan M. and Julia M. left the room and G.E.S. entered. R.M. remembered G.E.S. kissing her and putting her on the floor next to the bed. R.M. testified that she never consented to having sexual intercourse with G.E.S.
 {¶ 28} At trial, R.M. admitted that she had trouble remembering many parts of the night in question because she was so intoxicated. She further admitted that she lied at certain points during the investigation, but she also provided explanations for her inconsistencies. For instance, when a social worker interviewed R.M. about the rape the day after it occurred, R.M. told the social worker that she had never had sexual intercourse before this night. R.M. recanted her statement at trial and admitted that she had been sexually active with her boyfriend, Michael S., before the night of the rape. R.M. explained that she lied to the social worker during the interview because she did not want her mother to know that she had been sexually active. Consequently, R.M. was able to explain her inconsistent statement.
 {¶ 29} At several points during cross-examination, R.M. admitted that she could not sufficiently recall many of the events surrounding the rape so as to discredit the testimony of other witnesses. Rather than disagree with their *Page 18 
statements, she simply testified that her limited recollection prevented her from doing so. G.E.S. cites R.M.'s "selective memory" to attack her credibility, arguing that R.M. "conveniently" remembered all the periods of time during which he allegedly raped her, but none of the periods of time that might have helped his defense. Ideally, R.M. would have been able to remember and testify to all of the events in question. Yet, her inability to do so does not warrant our disregarding the entirety of her testimony. R.M. testified that she drank about four full glasses of vodka shortly after she arrived at Lucky C.'s apartment. Thus, one could attribute her memory failure to either her alcohol ingestion or to an intentional attempt at deceit. While we certainly bear this dilemma in mind in accessing R.M.'s credibility, we decline to adopt G.E.S.'s position and to find R.M. wholly unreliable. Rather, we consider R.M.'s credibility in light of the remaining witnesses' testimony.
 {¶ 30} Samantha B., R.M.'s friend, testified that she arrived at Lucky C.'s apartment with R.M., but left soon after. She accompanied Lucky C. when he drove a few other individuals home and did not return to the apartment for an hour to an hour and a half. Samantha B. testified that upon her return she observed R.M. was "very, very drunk." She could smell the alcohol on R.M.'s breath and stated that R.M. "couldn't even talk" and "couldn't get up." Although Samantha B. never witnessed R.M. drink because she was with Lucky C. at the time, she testified that it was obvious to her that R.M. was drunk. *Page 19 
 {¶ 31} Lucky C. testified that after R.M. and Samantha B. arrived at his apartment, he and Samantha B. left to take several individuals home. On their return trip, they met up with G.E.S. at a gas station and Lucky C. invited him over. Lucky C. testified that when he returned, he observed that R.M. was intoxicated. He explained that she "was totally out[,]" "[didn't] know what [was] going on around her[,]" and had "scrambled" speech. He further indicated that R.M. did not seem to have control over herself.
 {¶ 32} Lucky C. testified that Ryan M. carried R.M. to the bedroom and that Julia M. joined them. Lucky C. repeatedly looked in on R.M. when she was in his bedroom and saw Ryan M. having sexual intercourse with R.M. Lucky C. stated that R.M. "appeared asleep" and "just laid there" while Ryan M. had sex with her. He also observed that Ryan M. and Julia M. were engaging in sexual contact with each other while Ryan M. was having sexual intercourse with R.M. Lucky C. admitted that he did nothing to stop Ryan M. and that after he observed this he returned to his living room to sit down. A short while later, Lucky C. witnessed Julia M. emerge from the bedroom followed by Ryan M. He testified that Julia M. was crying and that she and Ryan M. left the apartment. Subsequently, Lucky C. and G.E.S. went to the bedroom.
 {¶ 33} Once the two were in the bedroom with R.M., Lucky C. observed G.E.S. "start making out with [R.M.] and touching her private part." Lucky C. testified that this caused R.M. to say "what's going on[,]" but that she continued to *Page 20 
lay there and did not appear to be in control of herself. He went on to testify that G.E.S. picked R.M. up and placed her on the floor next to the bed. G.E.S. then had sexual intercourse with R.M. About five to ten minutes later, Lucky C. testified, there was a loud knock at the apartment door. At this point, G.E.S. stopped having sex with R.M., got up, and dressed himself. Lucky C. testified that after this, R.M. picked herself up and crawled back into the bed.
 {¶ 34} Michael S., R.M.'s boyfriend at the time of the incident, testified that he was one of the individuals who banged on Lucky C.'s apartment door. Although Michael S. had left earlier and decided to leave R.M. behind, he testified that he changed his mind and decided to return to the apartment. Michael S. testified that earlier in the evening he witnessed R.M. drink a full glass of "straight vodka" and that he thought she might have had one more drink after that. He observed that R.M. "seemed kind of messed up[.]" When he later told R.M. that he wanted to leave, he testified that she "didn't seem completely conscious to me. * * * I couldn't even get her to stand up" because she was "[d]runk and tired[.]" Lastly, Michael S. testified that when he returned later that night he found R.M. in Lucky C.'s bed. He had to shake her to wake her up, and when she finally woke up to speak with him she seemed upset and started to cry.
 {¶ 35} Andrea Leaver, a social worker at Akron Children's Hospital, testified that she interviewed R.M. on April 17, 2006. She testified that R.M. was visibly upset throughout the entire interview, which lasted approximately twenty-five minutes. *Page 21 
During the interview, R.M. told Leaver that she had ingested four glasses of vodka on the night of the rape, "was completely intoxicated, and * * * remembered parts of what had happened[.]" R.M. told Leaver that she remembered being carried to Lucky C.'s bedroom and being "drug off the bed" and "forced to the ground" by G.E.S. She further stated that she "passed out" and woke up "completely naked" to see G.E.S. putting his pants on. Lastly, R.M. told Leaver that her body was very sore and tired and that "she knew she had been raped."
 {¶ 36} At the close of the State's case, G.E.S. presented his witnesses. Ryan M. testified that from the moment R.M. arrived at Lucky C.'s apartment, she joined the other girls at the party in "flashing" the partygoers. Ryan M. further claimed that R.M. kissed the girls at the party and only drank about "half an ounce" of vodka the entire night. Moreover, Ryan M. testified that R.M. voluntarily went to Lucky C.'s bedroom with him and Julia M. He testified that R.M. kissed Julia M. and performed oral sex on her. Ryan M. then had sexual intercourse, first with Julia M., and then with R.M. After that, Ryan M. claimed that he and Julia M. went outside for about forty-five minutes. When they decided to leave, Ryan M. and Julia M. went back inside and saw Lucky C. on the couch. He "assumed" G.E.S. was in the bedroom with R.M. because he did not see him anywhere else. He claimed that he subsequently entered the bedroom to tell G.E.S. and R.M. "to stop" because he saw R.M.'s boyfriend, Michael S., *Page 22 
approaching the apartment door. Ryan M. never explained how his perceptions changed from "assuming]" that G.E.S. was in the bedroom at all to knowing G.E.S. and R.M. were having sex such that they needed "to stop[.]" However, Ryan M. specified that when he did enter the bedroom he saw G.E.S. having sexual intercourse with R.M. on the floor next to the bed.
 {¶ 37} According to Ryan M., R.M. was lucid the entire night. Ryan M. testified that R.M. "made a phone call to her mother, spoke clearly, concisely, no slurring of words, no stumbling, nothing of the sort." However, Ryan M. also admitted that he initially lied to the police about having sex with R.M. and that he had faced charges as a result of this incident.
 {¶ 38} Julia M., Ryan M.'s girlfriend, testified that after R.M. went into Lucky C.'s bedroom with Ryan M., she eventually joined them on Lucky C.'s bed. R.M. asked if she could kiss Julia M. and perform oral sex on her, and Julia M. allowed her. Julia M. testified that Ryan M. then asked if R.M. wanted to have sexual intercourse and R.M. agreed. This upset Julia M. because Ryan M. was her boyfriend, so she left the room. Julia M. claimed that she went outside, but returned to Lucky C.'s bedroom about five to ten minutes later. She further claimed that at this time she witnessed R.M. having sexual intercourse with G.E.S. Yet, she could not recall whether they were having sex "on the floor at the end of the bed" or on the bed itself. *Page 23 
 {¶ 39} Julia M. testified that she did not see R.M. drink any alcohol on the night in question and that R.M. was not intoxicated. She specified that during the course of the night, R.M. had no difficulty walking and "didn't slur her words." She also corroborated Ryan M.'s statement that R.M. called her mother at some point during the night and had no difficulty talking to her. Julia M. admitted, however, that her testimony contradicted her earlier statement to the police. She told the police that she and Ryan M. left the apartment right after the incident in the bedroom, so she did not know if anything happened between R.M. and G.E.S.
 {¶ 40} G.E.S. testified that he arrived at Lucky C.'s apartment at the same time that Lucky C. and Samantha B. returned. He further testified that when he entered the living room he saw R.M. on the couch with Ryan M., who "had his hand up [R.M.'s] shirt." G.E.S. averred that R.M. never had any trouble talking, was conscious the entire time, and that he never saw her drink any alcohol. He further stated that R.M. walked to Lucky C.'s bedroom on her own and that Ryan M. and Julia M. followed her. G.E.S. claimed that at some point he and Lucky C. joined R.M., Ryan M., and Julia M. in the bedroom and that he lent R.M. his cell phone so she could call her mother. He testified that he and Lucky C. then left the bedroom and returned to the living room. Julia M. emerged from the bedroom about five to ten minutes later crying and indicating that Ryan M. was having sexual intercourse with R.M. G.E.S. testified that he stood up, went to the bedroom, and saw Ryan M. and R.M. having sex. G.E.S. then returned to the *Page 24 
living room and witnessed Ryan M. leave the bedroom shortly thereafter. G.E.S. stated that after Ryan M. went outside to join Julia M., he and Lucky C. went to the bedroom.
 {¶ 41} G.E.S. claimed that when he and Lucky C. lay down on the bed with R.M., she began to kiss him and "stuck her hand down [his] pants." G.E.S. further claimed that R.M. told him that she wanted to have sexual intercourse with him, but insisted that they do so on the floor instead of the bed. G.E.S. testified that he had sex with R.M. for about five minutes, but then stopped because Lucky C. told him that R.M.'s older brother was outside on his way up to the apartment. He explained that Lucky C. was wrong and it was actually Michael S. who was returning to the apartment. Once Michael S. returned, however, G.E.S. decided to leave at the same time as Ryan M. and Julia M.
 {¶ 42} G.E.S. argues that the State's witnesses were biased because they were all connected to R.M. Samantha B. was R.M.'s friend, Michael S. was R.M.'s boyfriend at the time of the incident, and Lucky C. was a friend of R.M.'s older brother. However, G.E.S. fails to explain why this Court should treat the State's witnesses any differently from the defense's witnesses, each of whom had motivation to lie as well. Ryan M. was the other party that R.M. alleged to have raped her, Julia M. was Ryan M.'s girlfriend and allegedly engaged in sexual contact with Ryan M. while he raped R.M., and G.E.S. himself was attempting to *Page 25 
defend against R.M.'s rape allegations. Consequently, none of the key witnesses at G.E.S.'s trial were free from possible sources of bias.
 {¶ 43} Based on our review of the record, we conclude that the trial court's decision to adopt the magistrate's ruling was not against the manifest weight of the evidence. Not a single witness provided an account of the evening that was entirely consistent with another witness's accounting. Yet, several of the witnesses testified that R.M. consumed large amounts of alcohol, was visibly inebriated, and appeared to have no control over her body. The weight of the evidence supports a finding that R.M. was substantially impaired and that her impairment would have been evident to anyone observing her that evening. Consequently, the record supports G.E.S.'s sexual battery conviction. See R.C. 2907.03(A)(2) (prohibiting an offender from engaging in sexual conduct with a person when the offender knows that person is substantially impaired).
 {¶ 44} At the end of his manifest weight argument, G.E.S. also claims that the magistrate's decision was tainted because of a comment that the magistrate made about R.M. during the August 14, 2007 dispositional hearing. Apart from the fact that G.E.S. has failed to address this argument in a separate assignment of error, he fails to cite any law in support of his proposition that the magistrate "was improperly influenced by other considerations[.]" As such, we decline to address it. See App. R. 16(A)(7). *Page 26 
 {¶ 45} Having disposed of G.E.S.'s challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. G.E.S.'s fifth and sixth assignments of error are overruled
 Assignment of Error Number Four "THE TRIAL COURT ERRED TO THE PREJUDICE OF [G.E.S.] BY OVERRULING [G.E.S.]'S OBJECTIONS TO THE MAGISTRATE'S DECISION AS THE PREPARATION AND PERFORMANCE OF [G.E.S.]'S TRIAL COUNSEL WAS DEFICIENT AND PREJUDICED [G.E.S.] IN SUCH A WAY AS TO VIOLATE [G.E.S.]'S RIGHTS AS GUARANTEED BY THE SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 46} In his fourth assignment of error, G.E.S. argues that his counsel made multiple errors, which resulted in his being deprived of effective assistance of counsel. Specifically, he argues that his counsel failed to: (1) offer evidence related to myspace.com and the victim's emails; (2) offer evidence of his cell phone records; (3) subpoena various witnesses to testify; (4) list his mother as a potential witness; (5) effectively cross-examine the State's witnesses; and (6) renew his Crim. R. 29 motion at the end of G.E.S.'s case-in-chief.
 {¶ 47} In reviewing a juvenile's ineffective assistance of counsel claim, this Court applies the same test that it applies to adult offenders. See In re R.T., 9th Dist. Nos. 05CA008728 05CA008742,2006-Ohio-1311, at ¶ 26. To prove an ineffective assistance claim, G.E.S. must show that: (1) counsel's performance was deficient to the extent that "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment [,]" and (2) "the deficient *Page 27 
performance prejudiced the defense." Strickland v. Washington (1984),466 U.S. 668, 687. To demonstrate prejudice, G.E.S. must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. Furthermore, the Court need not address both Strickland prongs if Appellant fails to prove either one. State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10.
Myspace.com Entries and Emails {¶ 48} G.E.S. argues that his counsel should have introduced copies of R.M.'s myspace.com webpage because it would have shown "R.M.'s sexual interest and nature." G.E.S. attached copies of these items to his objections to the magistrate's decision. He argues that the strong sexual overtones of R.M.'s entries somehow would have shown that R.M. "was in control of her actions, knew what she was doing, and was the initiator of the sexual events which occurred on April 14-15, 2006." G.E.S. seems to be insinuating that R.M.'s sexual proclivities are evidence that she could not have been raped. We fail to see how the content of R.M.'s webpage rebuts the testimony of the multiple witnesses who stated that R.M. was heavily intoxicated on the night that G.E.S. had sexual intercourse with her. This evidence has no bearing on our holding that the record supports the *Page 28 
conclusion that R.M. was substantially impaired and G.E.S. knew that when he had sex with her. Consequently, G.E.S. cannot demonstrate prejudice as a result of his counsel's failure to introduce this evidence. See Strickland, 466 U.S. at 687.
 {¶ 49} G.E.S. also argues that his counsel should have introduced an email that R.M. sent to G.E.S. on April 18, 2006, in which she indicated that she was sorry and did not intend to press charges against G.E.S. He claims that R.M. sent this email from her myspace.com account, but that the email does not show up as an entry in the myspace.com account information that he subpoenaed. G.E.S. argues that this is evidence that R.M. may have deleted this email, and possibly other similar emails. Yet, "[speculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel."State v. Leyland, 9th Dist. Nos. 23833 23900, 2008-Ohio-777, at ¶ 7, citing State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 27. Thus, G.E.S. has failed to demonstrate prejudice. SeeStrickland, 466 U.S. at 687.
Cell Phone Records {¶ 50} G.E.S. argues that his counsel should have obtained and sought to introduce his cell phone records to show that R.M. called her mother shortly before she had sexual intercourse with G.E.S. He argues that the evidence of this cell phone call would have shown that R.M. was not substantially impaired. Initially, we note that R.M. never denied calling her mother. She merely testified *Page 29 
that she could not remember doing so. More importantly, however, G.E.S. has failed to explain how the fact that a call to R.M.'s home was placed would have changed the result in his trial. The cell phone records would not have shown who placed that call or the content of the ensuing conversation. At most, the cell phone records would have shown that a call was placed; a fact that R.M. did not attempt to dispute. G.E.S., Ryan M., and Julia M. all testified that R.M. made a call to her mother. Consequently, the lower court was able to consider that evidence in making its decision. We cannot say that G.E.S. suffered any prejudice as a result of not having a sliver more of corroborating evidence on this point. See id.
Witness Selection {¶ 51} G.E.S. argues that his counsel failed to call various witnesses including: R.M.'s mother; R.M.'s guidance counselor; Detective Robinson, an Akron Police Department detective who investigated this matter; and Corrine G., another individual who frequented Lucky C.'s apartment on the night of the incident. He argues that these witnesses could have testified about inconsistencies in the statements of the State's witnesses. This Court has previously held that "[decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." Elyria v. Bozman, 9th Dist. No. 01CA007899, 2002-Ohio-2644, at ¶ 17, quoting State v. Coulter (1992), 75 Ohio App.3d 219, 230;State v. Toney, 9th Dist. No. 04CA0013, 2004-Ohio-4877, at ¶ 11. Moreover, G.E.S. "has provided no documentation of the witnesses'] proposed testimony, and his *Page 30 
argument that the testimony would benefit his defense is based upon mere speculation." State v. Peterson, 9th Dist. No. 23434, 2007-Ohio-2091, at ¶ 8. Having already noted that we will not engage in speculation in analyzing a claim of ineffective assistance of counsel, we must again conclude that G.E.S. has failed to show prejudice as a result of his counsel's decision not to call these witnesses. See Leyland at ¶ 7.
Inclusion of Nancy S. on G.E.S.'s Witness List {¶ 52} G.E.S. argues that he suffered prejudice as a result of his counsel's failure to include his mother on the defense's witness list. We have already concluded, however, that G.E.S. failed to proffer his mother's testimony. Moreover, he failed to include documentation of her proposed testimony in his objections to the magistrate's decision. SeePeterson at ¶ 8. "[A] claim of ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings." Leyland at ¶ 7, citingState v. Sweeten, 9th Dist. No. 07CA009106, 2007-Ohio-6547, at ¶ 10-12. Without any indication as to what the substance of Nancy S.'s testimony might be, we cannot conclude that G.E.S. suffered prejudice as a result of its exclusion. See Strickland, 466 U.S. at 687.
Method of Cross-Examination {¶ 53} G.E.S. argues that his trial counsel failed to adequately cross-examine the State's witnesses by pointing out inconsistencies in their respective *Page 31 
statements. First, G.E.S. argues that his counsel failed to point out the "glaring inconsistencies" between the investigative statements and the testimony of the State's witnesses. Yet, G.E.S. does not specify what these inconsistencies were or how counsel's pointing them out would have changed the result in his trial. See App. R. 16(A)(7) (providing that an appellant has the burden of pointing to facts in the record in support of his argument). As such, we will not create an argument on his behalf. See Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out").
 {¶ 54} Second, G.E.S. argues that his counsel did not draw enough attention to the substantial ties that the State's witnesses had to the victim. The Ohio Supreme Court has noted, however, that "[t]he extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, at ¶ 146. Moreover, the record reflects that each of the State's witnesses testified about their respective relationships with R.M. The lower court was well aware of each witness's ties to the victim before issuing its decision.
 {¶ 55} Finally, G.E.S. argues that his counsel failed to cross-examine certain witnesses about the "pre-trial communications" that they had with R.M.'s mother regarding their testimony. Once again, the scope of cross-examination is a *Page 32 
trial tactic. Id. Furthermore, none of the witnesses who testified at G.E.S.'s trial, including G.E.S., were consistent with one another, and the majority of the witnesses, including both of defense counsel's witnesses, admitted to giving inconsistent statements. We cannot find that the introduction of one or two more inconsistent statements would have changed the trial court's determination. Thus, G.E.S. has failed to show prejudice. See Strickland, 466 U.S. at 687.
Renewal of Motion for Directed Verdict {¶ 56} Lastly, G.E.S. argues that his trial counsel was ineffective because he failed to renew his motion for directed verdict at the end of G.E.S.'s case-in-chief. The record reflects that G.E.S.'s counsel moved for directed verdict at the close of the State's case, thereby preserving the issue of sufficiency for appeal. "Although it is customary for defense counsel to make a motion for acquittal as a matter of course to test the sufficiency of the state's evidence, the failure to follow that course of action [does] not mean the performance of a defendant's trial counsel fell below a reasonable standard of representation." (Citation and internal quotations omitted.) State v.Fetter, 9th Dist. No. 03CA0012, 2003-Ohio-5778, at ¶ 21, quotingState v. Scott, 6th Dist. No. S-02-026, 2003-Ohio-2797, at ¶ 21. Consequently, G.E.S. has failed to demonstrate ineffective assistance of counsel.
 {¶ 57} G.E.S.'s fourth assignment of error is overruled. *Page 33 
 III {¶ 58} G.E.S.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
 Costs taxed to Appellant. *Page 34 
Moore, J., concurs.
[1] During oral argument, G.E.S.'s counsel also sought to rely onState v. Colon, Slip Opinion No. 2008-Ohio-1624. In Colon, the Ohio Supreme Court held that a defendant may contest a defective indictment for the first time on appeal if the indictment fails to charge a mens rea. Colon at syllabus. Apart from the fact that Colon did not involve a juvenile offender, the factual and procedural postures of G.E.S.'s case differ from Colon's because G.E.S. actually raised the defective indictment issue below and both the magistrate and trial court considered his argument on the merits. Consequently, even if we were to determine that Colon applies in juvenile matters, its holding would be inapplicable in this case.