DECISION AND JUDGMENT
{¶ 1} In this appeal from a judgment of the Ottawa County Court of Common Pleas, Juvenile Division, we are asked to decide whether the trial court abused its discretion in awarding temporary custody of Kenn B. III to appellee, the Ottawa County *Page 2 
Department of Jobs and Family Services. Appellant, Sarah C, asserts the following assignments of Error:
 {¶ 2} "The court's action in permitting a witness to testify was an abuse of discretion, [sic] since the state did not provide defense counsel with complete discovery and did not disclose a witness list prior to hearing.
 {¶ 3} "The court erred in admitting into evidence the hospital records of Kenn [B.] when such records had not been qualified under the business records exception to the hearsay rule.
 {¶ 4} "The trial court's decision was against the manifest weight of the evidence."
 {¶ 5} The following facts are relevant to our disposition of appellant's assignments of error.
 {¶ 6} On September 7, 2007, appellant gave birth to Kenn. Because he was premature, that is, born after only 29 weeks of gestation, Kenn weighed two pounds and 13 ounces and was admitted to the Neonatal Intensive Care Unit at St. Vincent Mercy Medical Care Center. Due to the fact that an abruption of the placenta occurred shortly after Kenn's birth, a toxicology screen of both his urine[1] and meconium[2] was ordered. *Page 3 
The toxicology test established that Kenn had traces of both marijuana and cocaine in his meconium.
 {¶ 7} Kenn was in the hospital for several weeks. Both parents agreed that appellee could provide voluntary protective services for their child when he was released from the hospital. This agreement meant that the appellee would formulate case plans for the parents that included "drug and alcohol screening, follow-up counseling, parenting classes, mental health screening, [and] acquiring some safe and stable living conditions." Upon his release, Kenn went home with appellant to her mother's house in Ottawa County.
 {¶ 8} The results of a subsequent court-ordered blood test showed that appellant was using "drugs." At that point, appellee filed a motion asserting that Kenn was an abused/dependent child and asking that temporary custody of this child be awarded to his fraternal aunt and uncle. The court granted this motion and scheduled an adjudicatory hearing.
 {¶ 9} Although there is no written request for discovery in the record of this case, the parties agree that appellant made such a request in mid-November. The adjudicatory hearing was scheduled for November 20, 2007, but was continued at the request of appellee. On November 30, 2007, appellant filed a motion to dismiss this cause because appellee allegedly failed to provide any "discovery of medical records and persons to testify in a timely manner." On that same date, appellant also filed a motion in limine *Page 4 
asking the court to limit the testimony of Jean Ficks, the certified neonatal nurse practitioner who cared for Kenn while he was in the hospital, "to matters of nursing only." Appellant urged that Ficks was neither qualified to testify with regard to either the testing methods used and the accuracy of the tests performed on Kenn's meconium nor to provide a medical opinion.
 {¶ 10} The adjudicatory hearing was held on December 10, 2007. At the outset of the hearing, the juvenile judge heard oral argument on appellant's motions. Appellant's attorney asserted that the only discovery provided by appellee was 12 "pages of running record from the Ottawa County Department of Human Services [sic], and then some * * * medical notes from Saint Vincent's Mercy Medical Center." He claimed that he did not receive a list of the witnesses to be called until the hearing and argued "surprise" and a violation of due process. The attorney again complained that Ficks' testimony must be limited to nursing matters. He also contended, in essence, that the results of the tests on Kenn's urine and meconium should not be entered into evidence because health department regulations require two separate tests in such instances rather than just one test.
 {¶ 11} Appellee pointed out that at the time scheduled for the first, but continued, adjudicatory hearing on November 20, 2007, Betsy Gordon, the social service worker, who investigated the allegations against appellant and Kenn's father, was present and that, on that same date, appellant was aware of Jean Ficks as a witness, because she *Page 5 
raised the question of Jean Ficks' ability to testify. Appellee further pointed out that Ficks' name was mentioned throughout the medical records provided to appellant and that the address at which she could be reached was also in those records. As to appellant's motion in limine, appellee asserted that it should be raised again at the appropriate time, if any, during Ficks' testimony. Appellant's attorney then stated, "I will accept that Jean Ficks can testify as to nursing matters. She is a nurse."
 {¶ 12} Based upon the foregoing, the trial court denied appellant's motion to dismiss and took appellant's motion in limine "under advisement." Betsy Gordon then testified that she went to the hospital and spoke with both parents after learning that Kenn had marijuana and cocaine in his meconium. According to Gordon, appellant admitted that she "smoked" marijuana two to three times per week during her pregnancy[3] . Gordon subsequently spoke with Ficks, who told Gordon that by smoking marijuana during her pregnancy, appellant might have "triggered an early labor."
 {¶ 13} During Ficks' testimony, appellant objected to the admission of Kenn's certified medical record, which contained, inter alia, the results of the meconium toxicology screen, into evidence. Appellant argued that because the custodian of the medical record was not there to authenticate the record, it was not admissible into evidence. The court overruled that objection, apparently accepting appellee's argument that the medical record could be entered into evidence as a business record under *Page 6 
Evid. R. 803(6). Appellant again objected when Ficks was asked to testify as to the results of the toxicology screen, asserting that Ficks was being asked to give an expert opinion. The trial court overruled this objection. At the close of all evidence, appellee moved the court to enter Kenn's medical records into evidence. Once again, appellant objected to "the laboratory results and the rest of the record." The court overruled this objection.
 {¶ 14} On December 17, 2007, the juvenile court found Kenn to be an abused and dependent child and awarded temporary custody of the infant to Shannon and Ruth Anne B. At a later date, a disposition hearing was held and, as a result, the court ordered that Kenn remain in the temporary custody of Shannon and Ruth Anne and that case plans be formulated for his parents. This timely appeal followed.
 {¶ 15} In her first assignment of error, appellant asserts that her trial counsel was unable to adequately prepare for the adjudicatory hearing because (1) appellee failed to comply with Juv. R. 24(A)(1) by providing counsel with a witness list; and (2) appellee failed to provide her counsel with its complete file and Kenn's medical record. She contends, therefore, that the trial judge erred in failing to grant her motion to dismiss.
 {¶ 16} The purpose of discovery rules is to prevent surprise and the concealment of evidence favorable to one party. Lakewood v.Papadelis (1987), 32 Ohio St.3d 1, 3. The overall purpose of the rules is to produce a fair trial. Id. Juv. R. 24 governs discovery in juvenile proceedings, and reads, in relevant part: *Page 7 
 {¶ 17} "Upon written request, each party of whom discovery is requested shall * * * produce promptly for inspection, copying, or photographing the following information, documents, and material in that party's custody, control, or possession:
 {¶ 18} "(1) The names and last known addresses of each witness to the occurrence that forms the basis of the charge or defense[.]
 {¶ 19} "* * *
 {¶ 20} "(4) Any scientific or other reports that a party intends to use at the hearing or that pertain to physical evidence that a party intends to produce."
 {¶ 21} Pursuant to Juv. R. 24(C), a juvenile court may prohibit a party from introducing evidence at a hearing if that party fails to comply with the discovery provisions. In the alternative, the court may "grant a continuance * * * or enter such orders as it deems just under the circumstances." Id. In other words, the court has broad discretion when faced with an alleged failure to comply with a discovery request in a juvenile case. In re Johnson (1989), 61 Ohio App.3d 544, 548. Consequently, in the absence of a motion to compel, a trial court does not abuse its discretion in admitting evidence at a juvenile hearing that was not disclosed by the state or a family services agency. In theMatter of: Jeremy K. (July 27, 2001), 6th Dist. No. E-00-051. Therefore, we will not reverse a juvenile court's judgment with regard to evidentiary rulings absent an abuse of that discretion. In reG.E.S., 9th Dist. No. 23963, 2008-Ohio-2671, ¶ 19, citing State v.Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, ¶ 14. An abuse of *Page 8 
discretion is more than an error of law or judgment; it means that the trial court's attitude in reaching its decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1984),5 Ohio St.3d 217, 219.
 {¶ 22} Because Betsy Gordon was present on November 20, 2007, the first date scheduled for the adjudicatory hearing, appellant learned that she would be a witness on that date. Furthermore, on November 30, 2007, appellant filed a motion in limine asking the court to limit Jean Ficks testimony and was, therefore, aware of the fact that she would be a witness at that hearing. As Gordon and Ficks were the only two witnesses presented by appellee at the December 10, 2007 adjudicatory hearing, we cannot say that appellant was "surprised" by appellee's failure to provide him with a witness list.
 {¶ 23} The 12 pages of appellee's "running record," which was never offered or admitted into evidence at the adjudicatory hearing, that were given to appellant by appellee were those pages pertinent to Betsy Gordon's investigation in this case. While Gordon herself acknowledged that these 12 pages were not the entire record, her testimony was limited to the matters contained in those 12 pages. In addition, appellant failed in the court below and on appeal to articulate any reason for the necessity of any agency record that was not part of that investigation. As to the medical records, appellant was supplied with those that were germane to this case. Accordingly, the trial court did not abuse its discretion in denying appellant's motion to dismiss based upon purported *Page 9 
discovery violations and in admitting the testimony of appellee's two witnesses and Kenn's medical record. Appellant's first assignment of error is found not well-taken.
 {¶ 24} In her second assignment of error, appellant maintains that the trial court erred in admitting Kenn's medical record, in particular, the results of the toxicology screen, into evidence because appellee failed to present any testimony from the custodian of the records in violation of Evid. R. 803(6). In short, appellant claims that Kenn's medical record is inadmissible hearsay; therefore, the juvenile court abused its discretion in admitting this record.
 {¶ 25} Hearsay is an out-of-court statement, made by one who is not the declarant, at a trial or hearing, and is offered into evidence for the truth of the matter asserted. Evid. R. 801(C). In the case before us, the matter asserted was that Ken is an abused/dependent child because his toxicology screen established that he had marijuana and cocaine in his meconium. See In re Baby Boy Blackshear (2000), 90 Ohio St.3d 197, at the syllabus ("When a newborn child's toxicology screen yields a positive result for illegal drug due to prenatal maternal drug abuse, the newborn is, for the purposes of R.C. 2151.031(D), per se an abused child."). Generally, such hearsay, as found in Kenn's toxicology screen, is not admissible at a trial or hearing. Evid. R. 802. There are, however, exceptions to this rule. See Evid. R. 803 and 804.
 {¶ 26} Pursuant to Evid. R. 803(6), records that are normally considered inadmissible hearsay may be entered in to evidence if it is "shown by the custodian or *Page 10 
other qualified witness or as provided by Rule 901(B)(10)" that it was kept during the course of a regularly conducted business activity. In the present case, appellee qualified Ficks as a witness who could make the necessary attestation. Specifically, Ficks, who has a bachelor's degree in nursing, testified that in order to become a neonatal nurse practitioner, she was required to obtain a master's degree in a nurse practitioner program, pass a nationwide certification examination, and be a licensed practitioner in the state of Ohio. Ficks is also required to take 45 hours of continuing education, inclusive of 15 to 20 hours of pharmacology, every three years.
 {¶ 27} With her degree, certification, and license, Ficks cannot only perform nursing duties, but also prescribe medications, attend high risk deliveries, and write orders. It was Ficks who requested the toxicology screen and attested to the fact that the results of laboratory tests are regularly kept in a baby's chart "during the course of a hospital's business." Ficks also averred that the information given in her testimony was true and accurate. This included the results of the toxicology screen. Consequently, Kenn's medical record was properly admitted into evidence as a business record pursuant to Evid. R. 803(6). Moreover, Betsy Gordon was permitted to testify, without objection, that Kenn was "very premature, and that he had been tested positive for marijuana and opiates in his system." For these reasons, appellant's second assignment of error is found not well-taken. *Page 11 
 {¶ 28} In her third assignment of error, appellant maintains that the trial court's judgment adjudicating Kenn an abused and dependent child is against the manifest weight of the evidence. Pursuant to In re BabyBoy Blacks hear, the only evidence necessary to a finding that Kenn was, per se, an abused child was the result of the toxicology screen. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 29} The judgment of the Ottawa County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., CONCUR.
[1] The urine contained traces of an opiate, but this drug's presence could be attributed to the morphine given to appellant during childbirth.
[2] Meconium is a newborn's first "stool," which either remains in the child's body until birth or "is passed in utero." Traces of any drugs used by the mother during her pregnancy remain in the meconium for "several months."
[3] Appellant, upon cross-examination, admitted that she "smoked" marijuana during her pregnancy, but denied ever "knowingly" using cocaine. *Page 1