[Cite as *In re M.A.*, 2026-Ohio-142.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: M.A. | : |
| | :    C.A. No. 30586 |
| | : |
| | :    Trial Court Case No. G-2025-000066-0B,0C,0D |
| | : |
| | :    (Appeal from Common Pleas Court-Juvenile Division) |
| | : |
| | :    **FINAL JUDGMENT ENTRY & OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on January 16, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

_____
MARY K. HUFFMAN, JUDGE

LEWIS, J., and HANSEMAN, J., concur.

OPINION

ROBERT ALAN BRENNER, Attorney for Appellant
SARAH H. CHANEY, Attorney for Appellee Montgomery County Children Services
GARY C. SCHAENGOLD, Attorney for Appellee Father


HUFFMAN, J.

{¶ 1} A.M. ("Mother") appeals from a decision of the juvenile court that found her child, M.A., to be an abused child. For the following reasons, the judgment of the juvenile court is affirmed.

**Facts and Procedural History**

{¶ 2} On January 7, 2025, Montgomery County Department of Job and Family Services – Children Services Division ("MCCS") filed an abuse and dependency complaint alleging that it believed M.A. to be abused and dependent due to Mother's substance abuse throughout her pregnancy and the child testing positive for cocaine at birth. According to MCCS, Mother claimed that she was unaware of the pregnancy, did not receive prenatal care, and gave birth at home on September 30, 2024. She did not have any supplies to care for the child. It was reported to MCCS that Mother used cocaine and alcohol every other weekend and marijuana daily while pregnant. On October 2, 2024, MCCS contacted Mother and the child's father at Miami Valley Hospital. Mother admitted that she had used cocaine during her pregnancy and that her two other children were in the legal custody of their father. MCCS implemented an out-of-home safety plan and placed M.A. in the care of a nonrelative, M.M. On October 7, 2024, Mother received a substance abuse assessment from Miami Valley Recovery and successfully completed treatment on December 12, 2024. Drug screens administered on December 3, 2024, were negative for all illegal substances.

{¶ 3} An initial hearing occurred on January 30, 2025, and the matter was set for adjudication and disposition on March 20, 2025. A guardian ad litem report was filed, and the matter was continued for a hearing on April 2, 2025. At the conclusion of the hearing on that date, Mother and the child's father agreed to three months of protective supervision to MCCS, and the magistrate determined that to be in the child's best interest. A joint magistrate's decision and judge's order was issued the same day. It stated, "The Court finds that the Agency has not proven by clear and convincing evidence the facts sufficient to adjudicate the child as abused under ORC 2151.031(D) or dependent under ORC 2151.04(B)," but the court determined that the child "is adjudicated an abused child under ORC 2151.031(E) and dependent child under ORC 2151.04(C)."

{¶ 4} Mother filed objections to the magistrate's decision on April 9, 2025, specifically contesting the findings of dependency and abuse. She requested time to supplement her objections. On April 11, 2025, MCCS opposed the objections. M.A.'s father also objected to the magistrate's decision.

{¶ 5} Mother filed supplemental objections on June 6, 2025. MCCS responded to the objections on July 7, 2025. The juvenile court overruled the objections on July 21, 2025, finding that the magistrate properly found the child abused under R.C. 2151.031(E), that there was not sufficient evidence to find the child dependent pursuant to R.C. 2151.04(C), and that the magistrate properly admitted M.A.'s drug screen into evidence. Before addressing Mother's assigned errors, we review the evidence adduced at the hearing on April 2, 2025.

{¶ 6} Cindy Stillwell, a social worker at the Neonatal Intensive Care Unit at Miami Valley Hospital, testified that Mother acknowledged her drug use during her pregnancy but reported that she did not know she was pregnant, having experienced an ectopic pregnancy

3

in 2019. Mother "thought her tubes had been removed at that time," and Stillwell testified to confirming Mother's reported ectopic pregnancy in her 2019 medical records.

{¶ 7} Candace Rodgers, an intake social worker for MCCS, testified that the agency received a referral regarding M.A.'s birth and positive test for cocaine on October 1, 2024, and both parents acknowledged drug use. After their assessments, they "were receiving AOD treatment as well as drug screens," and they were both negative for illegal substances. Mother told Rodgers that she would not have used drugs or alcohol if she had known she was pregnant. Rodgers stated that both parents "were honest throughout the whole conversation," and Mother was "very forthcoming with information, but also remorseful."

{¶ 8} In the course of Rogers's testimony, Mother objected to the admission of M.A.'s drug screen record from Quest Diagnostics Nichols Institute ("Quest"), stating that "even though I agree and stipulate to their authenticity, that is separate from their scientific evidence level that's in there." The magistrate overruled the objection.

{¶ 9} Hannah Williams testified that she was the general manager of Lily's Dayton, and Father worked there from 2018 to 2023. Williams knew Mother throughout her pregnancy but did not know she was pregnant. Mother did not appear to be pregnant and was surprised when she had the baby.

{¶ 10} Emily Sewell-Smith testified that she had known Mother and Father for two years and was with them on September 30, 2024. Mother did not appear to be pregnant, and after M.A. was born, both parents were shocked. Sewell-Smith was aware that Mother had had her tubes tied, and that fact amplified the shock. She had observed Mother use cocaine.

{¶ 11} Ariana Davis also had known Mother and Father for about two years, and she had not known that Mother was pregnant, nor had Mother appeared to be. She was with

4

Mother most of the day on September 30, 2024. Davis also knew that Mother had had her tubes tied, and M.A.'s birth was "probably one of the biggest shocks I've ever had." She stated that Mother and Father were happy about the baby, but shocked as well.

{¶ 12} Mother testified that she learned that she was pregnant when she gave birth in her shower at home. She "really thought that my appendix was bursting. And I went to take a hot shower to try to help with the cramps. And I got the urge to push, and I knew at that point what was happening." Mother stated that she had an ectopic pregnancy that ruptured in 2019, and "they removed my entire right side and tied my left tube." According to her testimony, she was told that she could not have any more children.

{¶ 13} Mother stated that she had not felt the baby move while pregnant. When asked if she would have used cocaine if she had known about the pregnancy, she responded, "[a]bsolutely not. I've had three very healthy pregnancies, and I wouldn't jeopardize a child like that." She stated that M.A. had not suffered any physical or mental injury as a result of her drug use and that the child's welfare had not been harmed.

### Assignments of Error and Analysis

{¶ 14} Mother asserts two assignments of error. For ease of analysis, we first consider Mother's second assignment of error. It states:

> THE JUVENILE COURT ERRED WHEN IT ADMITTED M.A.'S DRUG
> SCREEN INTO EVIDENCE, OVER OBJECTION.

Mother argues that Candace Rogers, the intake social worker from MCCS, was not "'the custodian of the record or some other qualified person' that could testify about the inner workings of Quest Diagnostics."

{¶ 15} "Under Juv.R. 40(D)(4)(d), upon an objection to the magistrate's decision, the juvenile court must 'undertake an independent review as to the objected matter[ ] to

5

ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.'" *In re C.R.,* 2025-Ohio-557*,* ¶ 6 (1st Dist). "In doing so, the juvenile court 'must review the facts and determine the issues de novo.'" *Id.*, quoting *In re E.J.*, 2024-Ohio-2421, ¶ 18 (1st Dist.), citing *In re Y.H.*, 2023-Ohio-2272, ¶ 32 (1st Dist.). "Accordingly, 'juvenile courts may not defer to the magistrate.'" *C.R.* at ¶ 6, quoting *E.J.* at ¶ 18*,* citing *In re J.P.*, 2016-Ohio-7574, ¶ 21 (10th Dist.).

{¶ 16} An appellate court reviews a juvenile court's decision on objections to a magistrate's decision for an abuse of discretion. *In re L.E.S.*, 2024-Ohio-165, ¶ 14 (1st Dist.). If the appeal presents only questions of law, however, this court's review is de novo. *Id.*

{¶ 17} "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id*.

{¶ 18} Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 802 contains a general prohibition against the admission of hearsay. Evid.R. 803(6) provides the following hearsay exception for business records:

A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as

6

shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

{¶ 19} Evid.R. 901(B)(10) states a business record may be authenticated by any "method of authentication or identification provided by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio or by other rules prescribed by the Supreme Court." Pursuant to R.C. 2317.422(A), hospital records "may be qualified as authentic evidence if any such person endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution."

{¶ 20} Counsel for Mother stipulated to the authenticity of the drug screen record from Quest, and this assigned error is accordingly waived. Further, Rogers did not claim to be the custodian of the record, as Mother suggests; the drug screen record contains a certificate of authenticity signed by the custodian of the records at Quest, Amanda J. Payne. The court did not abuse its discretion in admitting the record, and Mother's second assignment of error is overruled.

{¶ 21} Mother's first assignment of error is as follows:

THE JUVENILE COURT ERRED WHEN IT FOUND M.A. TO BE AN ABUSED CHILD PURSUANT TO R.C. 2151.031(E).

{¶ 22} Mother raises two issues. She argues that the trial court erred in finding M.A. to be abused when she was not aware that she was pregnant and when M.A. suffered no injury or harm.

{¶ 23} The court was free to disbelieve Mother's testimony regarding her lack of knowledge of her pregnancy and any resulting harm to M.A. from her illegal drug use. *See*

7

*In re B.O.J.*, 2010-Ohio-791, ¶ 19 (10th Dist.). Pursuant to R.C. 2151.031(E), an "abused child" is one who, "[b]ecause of the acts of the child's parents, guardian, custodian, or caretaker, suffers physical or mental injury that harms or threatens to harm the child's health or welfare." The juvenile court relied upon *In re Blackshear*, 90 Ohio St.3d 197, 200 (2000), which held that when "a newborn child's toxicology screen yields a positive result for an illegal drug due to prenatal maternal drug abuse, the newborn is, for purposes of R.C. 2151.031(D), *per se* an abused child."[1] *See In re Kenn B., III*, 2008-Ohio-5033, ¶ 28 (6th Dist.) ("Pursuant to *In re Baby Boy Blackshear*, the only evidence necessary to a finding that Kenn was, per se, an abused child was the result of the toxicology screen."); *In re H.D.D.*, 2012-Ohio-6160, ¶ 41 (10th Dist.) ("Significantly . . . the admission of even one test result showing the presence of illegal drugs within a newborn's system justifies the trial court's adjudication of H.D.D. as a per se abused child.").

{¶ 24} M.A.'s drug screen indicated the presence of cocaine metabolite in the child's meconium specimen. Pursuant to *In re Baby Boy Blackshear,* the result of the toxicology screen was the only evidence necessary to finding that M.A. was, per se, an abused child. Mother's first assigned error is accordingly overruled.

### Conclusion

{¶ 25} Having overruled both of Mother's assignments of error, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HANSEMAN, J., concur.

---

1. The version of R.C. 2151.031 in effect at the time *Blackshear* was issued was amended, effective October 3, 2023, and the above definition of an abused child was moved from R.C. 2151.031(D) to 2151.031(E).