DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, William Lisy, appeals from his conviction in the Medina Municipal Court. This Court affirms.
 I {¶ 2} On the evening of January 7, 2008, Lisy returned home from work and went to his bedroom to sleep. Lynette Polacek, Lisy's fiancée and the mother of two of his children, woke Lisy several hours later. An altercation ensued, and Lisy shoved Polacek into his partially-open bedroom door. Polacek called 911 and reported the incident. Officers arrived shortly thereafter and arrested Lisy.
 {¶ 3} Lisy was charged with one count of domestic violence in violation of R.C. 2919.25(A). Following a bench trial, the court found Lisy guilty and sentenced him to suspended jail time, a fine, and probation. Lisy appeals from his conviction in the trial court and raises two assignments of error for our review. *Page 2 
 II Assignment of Error Number One "THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT ON THE CHARGE OF DOMESTIC VIOLENCE PURSUANT TO ORC § 2919.25(A) WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION."
 Assignment of Error Number Two "THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDNAT (sic) WHEN THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 4} In his first assignment of error, Lisy argues that his domestic violence conviction is based on insufficient evidence. In his second assignment of error, Lisy argues that his domestic violence conviction is against the manifest weight of the evidence. We disagree.
 {¶ 5} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 274. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386. *Page 3 
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Lisy's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 6} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 7} R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." The term "physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has *Page 4 
knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 8} Lisy concedes that he and Polacek were "family members" within the meaning of R.C. 2919.25(A). He argues, however, that he did not knowingly cause or attempt to cause her physical harm. According to Lisy, Polacek's injury was the "unintended result" of his "using reasonable force to remove an unwanted trespasser from his room."
 {¶ 9} Officer Steve Hoover testified that he responded to a domestic violence call from dispatch and arrived at Lisy's residence at approximately 11:30 p.m. Officer Hoover indicated that Polacek was very upset when he arrived and told him that Lisy, her boyfriend, had grabbed her neck. Officer Hoover confirmed that he noticed some redness on Polacek's neck. Lisy told Officer Hoover that he had arrived home at approximately 8:00 p.m. and had gone to bed shortly thereafter. According to Officer Hoover, Lisy stated that Polacek awoke him sometime later by screaming at him and accusing him of cheating on her. Lisy told Officer Hoover that "he had just basically reached * * * with his arm to get her out of * * * the bedroom and she fell down[.]"
 {¶ 10} Officer Sarah Hosta testified that Polacek was shaking and crying when she arrived at the scene. Polacek told Officer Hosta that Lisy had grabbed her by the neck and pushed her out of his bedroom after she had awoken him. Officer Hosta observed a "small cut or an abrasion" under Polacek's eye. Polacek indicated to Officer Hosta that she sustained the injury when Lisy pushed her because his push forced her into the partially-closed door of his bedroom.
 {¶ 11} Polacek testified that after Lisy arrived home from work and retired to his bedroom she began to inspect Lisy's cell phone to confirm her suspicions that he had been cheating on her. After listening to Lisy's voicemail messages, Polacek wrote Lisy a note reading *Page 5 
"you just sealed your fate," folded the note, and enclosed the folded note in Lisy's cell phone. Polacek then decided to talk to Lisy about what she had discovered. Although Lisy had locked the door to his bedroom, Polacek unlocked the door, let herself into the room, and proceeded to wake Lisy. Polacek admitted that Lisy was a heavy sleeper and that "[i]t probably wasn't the best approach" to wake him up after he had been asleep for a few hours, but insisted that she was upset and tired of allowing Lisy to avoid discussions about their relationship. Polacek further admitted that she shook Lisy several times in an attempt to wake him and refused to leave the room after he repeatedly told her to do so. Polacek testified that Lisy finally jumped out of bed, grabbed her by the neck, told her to "get the f**k out of his room," and tried shoving her out of the room by the neck. Lisy's shove caused Polacek's face to connect with the partially-open bedroom door, which then sent her reeling backwards and to the ground.
 {¶ 12} Lisy testified that he arrived at home just after 8:00 p.m. on the night of the incident and went to his bedroom to watch television before he fell asleep. Lisy estimated that he had consumed approximately three to four beers before coming home and skipped dinner because he did not want to eat so late. A few hours later, Lisy woke to Polacek "yelling at me to get the f up * * * and [] saying something about cheating." Lisy admitted that he told Polacek to "get the f**k out of [his] room" several times, but described himself as only being "mildly" upset. Lisy testified that he finally jumped out of bed to leave the room, but that Polacek closed the door on his hand when he reached for it. According to Lisy, he then threw up his hands and opened the door so fast that Polacek, who still had a hand on the door, was flung back against the wall. Lisy claimed that he never actually touched Polacek and never told Officer Hoover that he had used his arm to push Polacek backwards. Lisy further claimed that the mark on Polacek's face came from her roughhousing with one of their Rottweilers. *Page 6 
 {¶ 13} Based on our review of the evidence, we cannot conclude that the trial court lost its way in convicting Lisy of domestic violence. Polacek testified that Lisy grabbed her around the neck and shoved her, thereby causing her to hit her face on his bedroom door. Officer Hoover confirmed that he observed red marks on Polacek's neck, and Officer Hosta confirmed that she observed a "small cut or an abrasion" on Polacek's face. Accordingly, the record supports the trial court's conclusion that Lisy knowingly caused Polacek physical harm by grabbing her neck, shoving her into the door, and causing her a "small cut or an abrasion." See 2919.25(A). Moreover, Polacek told both Officers Hoover and Hosta the same version of the events. Lisy, however, changed his version of the events. Officer Hoover testified that when he interviewed Lisy on the night of the incident, Lisy admitted to using his arm to push Polacek. At trial, Lisy claimed that he never touched Polacek and never told Officer Hoover that he used his arm to touch her. As the trier of fact, the trial court was entitled to believe Polacek's and Officer Hoover's testimony over Lisy's testimony. See State v.Peterson, 9th Dist. No. 23434, 2007-Ohio-2091, at ¶ 19. Lisy's argument, that his conviction is against the weight of the evidence, lacks merit.
 {¶ 14} Having disposed of Lisy's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. SeeRoberts, supra, at *2. Lisy's first and second assignments of error are overruled.
 III {¶ 15} Lisy's two assignments of error are overruled. The judgment of the Medina Municipal Court is affirmed.
 Judgment affirmed. *Page 7 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 MOORE, P. J. SLABY, J. CONCUR *Page 1