DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, R.D.U., appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that found him to be a delinquent child and committed him to the custody of the Department of Youth Services. We affirm.
 {¶ 2} On August 6, 2007, K.B., a student a Tallmadge High School and a member of the football team, was assaulted in an apparent incident of hazing that involved several other football players. On October 3, 2007, a complaint was filed in the Summit County Court of Common Pleas, Juvenile Division, alleging that R.D.U. was a delinquent child be virtue of committing rape, a violation of R.C. 2907.02(A)(2) and a felony of the first degree when committed by an adult, and hazing, a violation of R.C. 2903.31 and a misdemeanor of the fourth degree when committed by an adult. The trial court adjudicated R.D.U. delinquent with respect to both charges and, on April 29, 2008, committed R.D.U. to the custody of the Department of Youth Services for a minimum term of one year or until he attained the age of twenty-one, but *Page 2 
suspended his commitment and placed him on probation. The trial court prohibited R.D.U.'s return to Tallmadge High School for one year and ordered him to have no contact with the victim; to complete forty hours of community service; to obtain and follow through on a substance abuse evaluation; to complete individual counseling; to "complete a letter of apology to the victim and his family"; and to "come up with a way, along with the assistance of his probation officer and his counselor, to make amends for his actions to both the victim and the community." R.D.U. was also classified as a Tier III offender pursuant to the Adam Walsh Act and notified of his registration requirements. This appeal followed.
 ASSIGNMENT OF ERROR "The trial court violated the minor RDU's rights to due process when it convicted him of rape, when that finding was against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution."
 {¶ 3} Defendant's assignment of error is that his adjudication for rape is against the manifest weight of the evidence. This Court disagrees.
 {¶ 4} In State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, the Supreme Court of Ohio explained that the standard by which courts of appeals evaluate the weight of the evidence differs in civil and criminal cases. Id. at ¶ 24-25. In civil cases, courts defer to the conclusions of the trial court regarding the reliability and credibility of evidence and consider whether the judgment is "supported by some competent, credible evidence going to all the essential elements of the case[.]" Id. at ¶ 24, quoting C.E. Morris Co. v. Foley Constr. Co.,54 Ohio St.2d 279, syllabus. Less deference is afforded to the trial court in criminal cases. Wilson at ¶ 26. In considering whether a criminal conviction is against the manifest weight of the evidence, "[the] weight of the evidence addresses the evidence's effect of inducing belief. * * * `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of *Page 3 
the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'" (Internal citations omitted.) Wilson at ¶ 25, quotingState v. Thompkins (1997), 78 Ohio St.3d 380, 387. In Wilson, the Court considered whether a criminal or civil standard for reviewing the manifest weight of the evidence is appropriate when reviewing a sexual predator classification under former R.C. Chapter 2950. The Court concluded that because sex offender classification proceedings are civil in nature, the more deferential civil standard is appropriate:
 "In State v. Cook, 83 Ohio St.3d 404, the defendant alleged that R.C. Chapter 2950 violated the prohibition against ex post facto legislation. * * * In holding that R.C. Chapter 2950 was not an ex post facto law, the court reasoned that it was meant to protect the public and therefore was remedial, not punitive.
 "In State v. Williams, [88 Ohio St.3d 513] the defendants alleged that R.C. Chapter 2950
violated the Double Jeopardy Clause because it inflicted a second punishment for a single offense. Relying on our reasoning in Cook, we reaffirmed that R.C. Chapter 2950 is `neither "criminal," nor a statute that inflicts punishment' and held that there was no violation of the Double Jeopardy Clause.
 "Consistent with our jurisprudence in those cases, we find that the sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature and that a court of appeals must apply the civil manifest-weight-of-the-evidence standard in its review of the trial court's findings." (Internal citations omitted.) Wilson at ¶¶ 30-32.
 {¶ 5} In contrast, although "[j]uvenile delinquency proceedings are civil rather than criminal in character[,]" they "also have inherently criminal aspects." In re: A.J.S., Slip Opinion No. 2008-Ohio-5307, at ¶ 26. With respect to the applicability of the constitutional protections afforded to criminal defendants, the court looks beyond the "civil" label that has historically attached to delinquency proceedings to the nature of the proceedings. See State v. Walls, 96 Ohio St.3d 437,2002-Ohio-5059, at ¶ 25-26. In that context, "determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew `the "civil" label-of-convenience which has been attached to juvenile proceedings,' and that `the juvenile process . . . *Page 4 
be candidly appraised.'" (Internal citations omitted.) Breed v.Jones (1975), 421 U.S. 519, 529, quoting In re Gault (1970), 387 U.S. 1,21, 50. Many constitutional safeguards that apply to criminal prosecutions also apply in delinquency proceedings, including protections afforded by the Fifth and Sixth Amendments, the requirement that the state prove the allegations against a juvenile beyond a reasonable doubt, and the Ex Post Facto and Double Jeopardy Clauses.Walls at ¶ 26.
 {¶ 6} The "inherently criminal aspects" of delinquency proceedings and the constitutional safeguards that apply to children who are alleged to be delinquent lead this Court to conclude that the criminal standard for reviewing the manifest weight of the evidence should be applied when reviewing delinquency adjudications. Accordingly, this Court:
 "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
Our discretionary power to reverse a delinquency adjudication based on the weight of the evidence power should be reserved for extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. See id.
 {¶ 7} R.D.U. was adjudicated delinquent by virtue of committing acts that would constitute rape, a violation of R.C. 2907.02(A)(2), if committed by an adult. R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct includes "the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another," and "[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). *Page 5 
 {¶ 8} K.B., the victim in this case, testified that he was sixteen years old at the time of the incident. On August 6, 2007, K.B. attended a "two-a-day[]" football practice at Tallmadge High School. He testified that after the team's lunch break, he sat on steps near a classroom trailer known as "the outback" while a group of other players assembled at the corner of the field. K.B. recalled that his teammates called to him and, as he approached, the older boys teased him, asking "why are you here?" and requesting his passport. K.B. testified that a teammate named S.K. picked him up, threw him to the ground, and straddled his stomach area. He stated that R.D.U. smacked his buttocks, grabbed his penis, and sat on top of his legs. As K.B. explained, the situation continued to worsen:
 "After my pants got pulled down, he — I was flipped over on my back, and another kid that was over there * * * he put a tackling dummy over my head so that I couldn't really turn back and forward or roll any way, and [R.D.U.], he was sitting on top of my legs, like I said, and he took a straw — or I didn't know it was a straw at the time, but he took something and was shoving it up my butt hole."
K.B. testified that R.D.U. inserted the object into his rectum "once or twice" and that he felt the insertion for "[p]robably five to eight seconds."
 {¶ 9} Karen B., who is K.B.'s mother, testified that her son had never discussed the incident with her, but that she noticed a change in his behavior after he came home from football practice. She recalled that it was "very plain that he was angry and upset" and that she "noticed him coming home and sleeping more." She also noted that K.B. withdrew from family members and became engrossed in his exercise regimen such that he "work[ed] out * * * with a vengeance."
 {¶ 10} Tallmadge police officer Dennis Eichler testified that he met with K.B.'s parents on September 27, 2007, and that they reported the incident to him at that time. He referred the matter to Detective Stacey Hurly, whose responsibility includes juvenile crime, for investigation. *Page 6 
Detective Hurly interviewed seven to ten people who witnessed the incident, including R.D.U. According to Detective Hurly's testimony, R.D.U. acknowledged that K.B. was depantsed; that S.K. sat on top of him; and that he "poked" and "goosed" K.B. with the straw. Detective Hurly recalled that R.D.U. also said that it was "definitely possible" that the straw had actually been inserted into K.B.'s rectum despite the fact that he did not initially believe so. Detective Hurly also testified regarding a recorded conversation between R.D.U. and S.K. in the backseat of a police cruiser. The recording was played at trial, but due to apparent confusion when exhibits were marked and entered into evidence, the recording was not included in the record on appeal.
 {¶ 11} R.C., who was also seventeen years of age in August 2007, witnessed the incident. In his words, the boys were "hazing, just messing around, and it got a little out of hand." He testified that S.K. "took [K.B.] to the ground" and that K.B.'s pants were removed to "just underwear." R.C. recalled that K.B. lay face-down on the ground with S.K. sitting atop him. According to his testimony, "after * * * [S.K.] had depantsed [K.B.], it happened really quickly, and [R.D.U.] grabbed a straw but I didn't see anything after that." R.C. emphasized that he did not see what R.D.U. did with the straw.
 {¶ 12} Having reviewed the testimony before the trial court and the reasonable inferences that may be drawn therefrom, this Court concludes that R.D.U.'s delinquency adjudication for rape was not against the manifest weight of the evidence. R.D.U. has argued that in pretrial statements to police, K.B. equivocated about whether penetration occurred. He has also argued that regardless of whether slight penetration occurred, R.D.U. lacked the mental state to commit rape. In other words, R.D.U. argues that although he penetrated K.B.'s anus with the object, he did not intend that penetration to be a rape. This argument misses the mark. "It is a fundamental principle that a person is presumed to intend the natural, reasonable and *Page 7 
probable consequences of his voluntary acts." State v. Lott (1990),51 Ohio St.3d 160, 168, quoting State v. Johnson (1978), 56 Ohio St.2d 35,39. K.B. testified at trial without equivocation that penetration occurred. The trier of fact could reasonably conclude from the evidence at trial that a rape had occurred as a result.
 {¶ 13} R.D.U.'s assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 MOORE, P. J. DICKINSON, J. CONCUR. *Page 1