[Cite as *In re T.J.*, 2014-Ohio-4919.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: T.J.

C.A. No.     27269

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.     DL 13 11 2178
                      DL 12 08 1912

DECISION AND JOURNAL ENTRY

Dated: November 5, 2014

HENSAL, Presiding Judge.

{¶1} Appellant, T.J., appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, adjudicating her delinquent by virtue of her having committed the offenses of solicitation and promoting prostitution. This Court affirms.

I.

{¶2} On November 6, 2013, several members of the Summit County Sheriff's Office conducted a prostitution sting at the Holiday Inn Express in Green. While one undercover officer waited in a hotel room equipped with video surveillance, other officers contacted females via the website "backpage.com." Services were negotiated with the women over the phone and, once the women arrived at the hotel room, the undercover officer solidified the arrangement. After the woman agreed to accept payment for rendering sexual services, other members of the Sheriff's Office entered the room and arrested the women. T.J., who was seventeen at the time, was one of the women arrested during the sting.

{¶3} The following day, a complaint was filed against T.J., alleging that she was a delinquent child by reason of having committed the crimes of (1) promoting prostitution, a third-degree felony in violation of R.C. 2907.22; and (2) solicitation, a third-degree misdemeanor in violation of R.C. 2907.24. T.J. was also charged with a probation violation, as the conduct in which she was alleged to have engaged was committed while she was on probation. T.J. denied all of the charges, and the case proceeded to an adjudicatory hearing.

{¶4} Directly after the first witness at the adjudicatory hearing was sworn in, defense counsel moved the court to dismiss the delinquency charge related to the offense of promoting prostitution. Defense counsel noted that the sworn complaint against T.J., while alleging the commission of both promoting prostitution and soliciting, relied upon the same factual narrative to substantiate both offenses. Because the factual narrative only supported the offense of soliciting, defense counsel argued, the complaint failed to allege any facts that might constitute the offense of promoting prostitution.

{¶5} In response to defense counsel's argument, the State asked the court for leave to amend the complaint in order to add the statutory language contained in R.C. 2907.22(A)(1). The court granted the amendment in the interests of justice, but offered defense counsel a continuance. Defense counsel declined the opportunity to seek a continuance and opted to proceed with the adjudicatory hearing. At the conclusion of the hearing, the trial court found T.J. delinquent by virtue of her having committed the offenses of solicitation and promoting prostitution. The court then entered its dispositional orders.

{¶6} T.J. now appeals from the court's judgment and raises two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND THE COMPLAINT AFTER THE ADJUDICATION HEARING STARTED BECAUSE THE STATE'S AMENDMENT CHANGED THE ESSENTIAL FACTS AND AMOUNTED TO AN UNSWORN COMPLAINT.

{¶7} In her first assignment of error, T.J. argues that the trial court erred when it allowed the State to amend the complaint against her after the adjudicatory hearing had already begun. Specifically, she argues that the court should not have allowed the State to amend the delinquency charge related to promoting prostitution. We disagree.

{¶8} A complaint charging a juvenile with delinquency must be made under oath, identify by number the statute alleged to have been violated, and "[s]tate in ordinary and concise language the essential facts that bring the proceeding within the jurisdiction of the court * * *." Juv.R. 10(B)(1)-(3). Once an adjudicatory hearing has commenced, a complaint generally may be amended either by agreement of the parties or, "if the interests of justice require, upon order of the court." Juv.R. 22(B). When the complaint is one charging delinquency, however, one must ask whether "the proposed amendment would change the name or identity of the specific violation of law so that it would be considered a change of the crime charged if committed by an adult." *Id.* If so, the complaint only may be amended by agreement of the parties. *Id.* "Where requested, a court order shall grant a party reasonable time in which to respond to an amendment." *Id.*

{¶9} "Unlike the Criminal Rules, the Juvenile Rules do not specify that a complaint must list each and every element of the offense." *In re G.E.S.*, 9th Dist. Summit No. 23963, 2008-Ohio-2671, ¶ 17. Instead, a delinquency complaint must contain the "essential facts" and the "numerical designation of the statute" at issue. Juv.R. 10(B)(1). The complaint "need not

specify the exact numerical designation of the statutory subsection under which the State intends to proceed so long as a reasonable, ordinary person would understand the charges against him, based on the language in the complaint." *In re G.E.S.* at ¶ 15.

{¶10} R.C. 2907.22(A) defines the offense of promoting prostitution and contains four subsections. The statute provides that no person shall knowingly

> (1) Establish, maintain, operate, manage, supervise, control, or have an interest in a brothel or any other enterprise a purpose of which is to facilitate engagement in sexual activity for hire;
>
> (2) Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire;
>
> (3) Transport another, or cause another to be transported, in order to facilitate the other person's engaging in sexual activity for hire;
>
> (4) For the purpose of violating or facilitating a violation of this section, induce or procure another to engage in sexual activity for hire.

R.C. 2907.22(A)(1)-(4). A violation of any of the four subsections is a third-degree felony if a minor is involved, regardless of "whether or not the offender knows the age of the minor." R.C. 2907.22(B).

{¶11} In the complaint against T.J., Detective Larry Brown averred that he had knowledge that T.J. appeared to be a delinquent child,

> in that, on or about the 6th day of November, 2013, * * * [w]hile conducting a multi-agency prostitution sting at 898 Arlington Ridge (Holiday Inn Express) in the City [o]f Green, [T.J.] did solicit an undercover officer to engage in sexual activity for hire, which acts are sufficient to establish the elements of Promoting Prostitution, in violation of Ohio Revised Code Section(s) 2907.22, a felony of the 3rd degree if committed by an adult * * *.

Thus, the complaint identified the name of the charged offense (promoting prostitution), the statute number of the charged offense (R.C. 2907.22), and the felony offense level of the charged offense (third-degree felony). It did not identify a specific subsection of R.C. 2907.22 or allege the elements of any specific subsection of R.C. 2907.22.

{¶12} Discovery commenced and, one week before the adjudicatory hearing, the State filed its pretrial statement. In its pretrial statement, the State alleged that T.J. "did knowingly establish, maintain, operate, manage, supervise, control or have an interest in an enterprise a purpose of which is to facilitate engagement in sexual activity for hire." The State further alleged that T.J. "admitted to managing and controlling the activities of a prostitute in engaging in sexual activity for hire." Accordingly, the State's pretrial statement referred to the statutory language contained in R.C. 2907.22(A)(1) and (A)(2).

{¶13} After the first witness at the adjudicatory hearing was sworn in, T.J. moved the court to dismiss the complaint on the basis that it failed to properly allege a count of promoting prostitution. T.J. argued that the facts alleged in the complaint only pertained to soliciting and that it was impossible to discern from the complaint which of several subsections of R.C. 2907.22 was at issue. The State then moved to amend the complaint to indicate that T.J. "did knowingly establish, maintain, operate, manage, supervise, control or have an interest in an enterprise the purpose of which was to facilitate engagement in sexual activity for hire." *See* R.C. 2907.22(A)(1). T.J. objected to the amendment, but the court allowed it on the basis that it did not change the name or level of the offense. The court offered T.J. a continuance, in light of the amendment, but T.J. indicated that she was prepared to go forward with the hearing.

{¶14} T.J. argues that the court erred by allowing the State to amend the complaint against her because the amendment changed the essential facts of her complaint and required her to respond to an unsworn charge. According to T.J., the Juvenile Rules only permit an amendment if it conforms to the evidence and amounts to a lesser-included offense of the crime charged. *See* 1994 Staff Note, Juv.R. 22. Because her original complaint only charged her with delinquency as a result of her having committed misdemeanor solicitation, T.J. argues, the State

could not amend it to allege that she had committed a completely separate felony offense; to wit: promoting prostitution.

{¶15} T.J.'s original complaint was not limited to a charge of delinquency by virtue of her having committed misdemeanor solicitation. The complaint also specifically charged her with delinquency as a result of her having committed the felony offense of promoting prostitution. The complaint named the charged offense of promoting prostitution, listed its statute number (R.C. 2907.22), and classified it as a third-degree felony. In seeking an amendment, the State never sought to change the nature of the charged offense. Instead, it sought to include language in the complaint that would clarify the subsection of the statute under which the State was proceeding. As previously set forth, the Juvenile Rules do not require the State to list each essential element or identify the statutory subsection under which it intends to proceed in the complaint. *In re G.E.S.*, 2008-Ohio-2671, at ¶ 15. *Compare State v. Headley*, 6 Ohio St.3d 475, 478-479 (1983) (criminal indictment fatally defective when "one of the vital elements identifying the crime is omitted from the indictment"). The question is simply whether a reasonable person would have understood the charges against him. *In re G.E.S.* at ¶ 15.

{¶16} Reviewing the complaint at issue here, a reasonable person in T.J.'s position would have understood that he or she was being charged with delinquency as a result of having committed third-degree felony promoting prostitution under R.C. 2907.22. The State's request to include the statutory language from R.C. 2907.22(A)(1) did not change the name of the offense, the level of the offense, or the penalty associated with the offense. While the State would have been prudent to set forth distinct factual narratives for each of the charges here, we cannot conclude that the amendment actually changed the name or identity of the offense. *See* Juv.R. 22(B). *See also State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-4537, syllabus

("[A]mending the indictment to change the penalty or degree changes the identity of the offense."). Thus, the trial court could allow the amendment in the interests of justice. *See* Juv.R. 22(B).

{¶17} The proposed amendment was consistent with the State's pretrial statement, which was filed one week before the adjudicatory hearing, and, as detailed below, conformed to the evidence against T.J. Further "[i]f [T.J.] had believed [her]self to be prejudiced by the amendment, [s]he could have moved the court for a continuance in accordance with Juv.R. 22(B)." *State v. Thomas*, 9th Dist. Lorain No. 95CA006055, 1996 WL 99770, *3 (Mar. 6, 1996). The court specifically offered T.J. a continuance, and she declined it. Having reviewed the record, we cannot conclude that the court erred by allowing the State to amend its complaint against T.J. Therefore, T.J.'s first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN AN ADJUDICATION FOR PROMOTING PROSTITUTION BECAUSE THE STATE PRESENTED ABSOLUTELY NO EVIDENCE OF THE EXISTENCE OF A BROTHEL[.]

{¶18} In her second assignment of error, T.J. argues that the State produced insufficient evidence to adjudicate her delinquent for having committed the crime of promoting prostitution. We disagree.

{¶19} "Although juvenile delinquency cases are technically civil in nature, this Court applies the same sufficiency and manifest weight standards of review in a juvenile delinquency case that it applies in an adult criminal appeal due to the 'inherently criminal aspects' of delinquency proceedings * * *." *In re L.F.*, 9th Dist. Lorain No. 10CA09880, 2012-Ohio-302, ¶ 6, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6. "Whether the

evidence is legally sufficient to sustain [an adjudication of delinquency] is a question of law" that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support [an adjudication of delinquency] is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The test for sufficiency requires a determination of whether the State has met its burden of production at trial." *State v. Collmar*, 9th Dist. Summit No. 26496, 2013-Ohio-1766, ¶ 7.

**{¶20}** R.C. 2907.22(A)(1) provides that "[n]o person shall knowingly * * * [e]stablish, maintain, operate, manage, supervise, control, or have an interest in a brothel or any other enterprise a purpose of which is to facilitate engagement in sexual activity for hire." Whoever violates the foregoing provision commits the offense of promoting prostitution. R.C. 2907.22(B).

**{¶21}** T.J. argues that the court erred by finding her delinquent because the State failed to prove that she established, maintained, operated, managed, supervised, controlled, or had an interest in a brothel. T.J. asserts that a brothel requires a physical location and that "[n]othing in 2907.22(A)(1) makes it a crime to offer services across the Internet."

**{¶22}** R.C. 2907.22(A)(1) was amended on September 29, 2013, approximately one month before T.J.'s arrest. While the prior version of the subsection required evidence of a brothel, the version that formed the basis of T.J.'s delinquency charge required the State to prove that T.J. established, maintained, operated, managed, supervised controlled, or had an interest in a brothel "*or any other enterprise* a purpose of which is to facilitate engagement in sexual

activity for hire." (Emphasis added.) R.C. 2907.22(A)(1). T.J.'s complaint, as amended, specifically alleged that she "did knowingly establish, maintain, operate, manage, supervise, control or have an interest in an enterprise the purpose of which was to facilitate engagement in sexual activity for hire." Thus, the State was not required to set forth evidence of a brothel.

{¶23} Detective Larry Brown, a detective with the Summit County Sheriff's Office, testified that he helped organize a prostitution sting at the Holiday Inn Express in Green. He explained that he and his fellow officers used websites, including "backpage.com," to contact females and arrange meetings with them at the hotel for the purpose of purchasing their sexual services. Detective Brown testified that T.J. was one of the females who came to the hotel the day of the sting. A video recording from one of the hotel rooms being used that day depicts T.J. entering the room with another young female. The two exchange in small talk with an undercover officer, who eventually asks the price for T.J. and the other female to engage in sexual activity with him. Once a price is solidified and T.J. and the other female indicate their willingness to proceed, the video recording depicts other officers entering the room and arresting both women.

{¶24} Detective Brown testified that he interviewed T.J. directly after her arrest. According to Detective Brown, T.J. admitted that she had posted the advertisement that the police department found on backpage.com. T.J. explained that the boilerplate in the advertisement always remained the same, but that she would swap out the picture of the girl depicted in the advertisement, depending on which girl was available that day. T.J. further explained that she used her iPhone to post the pictures, but that the phone number listed on the advertisement was linked to a disposable phone. T.J. showed Detective Brown the pictures she kept on her iPhone. He described the pictures as "girls posing provocatively, girls that had their

shirts off that were in just a bra and other girls that were partially naked." According to Detective Brown, "[y]ou could see braces, you could see that [the girls in the pictures] looked to be younger and it was just photos that were in her phone that matched photos like [the one on the backpage.com advertisement]."

{¶25} Detective Brown testified that T.J. admitted she had been prostituting herself for a few months. He further testified that T.J. explained the breakdown of the money that she and her female companion would receive on any given call. Specifically, she explained that the person who drove them to the location would generally be given a small fee for doing so and that she and the other girl would then split the remaining proceeds 50/50. According to Detective Brown, T.J. was "adamant" that she was the one who had posted the advertisements on backpage.com. T.J. also used her iPhone to show Detective Brown the posts that she had made to the website.

{¶26} The State introduced into evidence the actual backpage.com advertisement that the police department used to contact T.J. and the young female that came with her on the day of her arrest. The advertisement identifies the woman in the picture as "Jaimie" and is captioned: "Jaimie new to backpage. 100$ special today only!!!" The date stamp below the caption indicates that the advertisement was posted to backpage.com on October 30, 2013. The text of the advertisement provides:

> New to backpage[.]
>
> If you come to me I have a special going only for tonight. Looking for some generous gentlemen to spend some time with tonight. Located on the east side of Akron. In call and outcall available[.] Ask about my two girl special. Call or text 330******* for more info and ask about Jaimie. I don't disappoint. Money back guarantee[.]

The advertisement also includes two pictures of the girl who accompanied T.J. to the hotel room on the night of her arrest. One picture is a close-up of the girl smiling in a seated position. The

other picture shows the same girl, smiling while lying across a large bed with the lengths of both of her legs exposed.

{¶27} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found that T.J. knowingly established, maintained, operated, managed, supervised, controlled, or had an interest in an enterprise whose purpose was to "facilitate engagement in sexual activity for hire." R.C. 2907.22(A)(1). T.J. was arrested when she and another female responded to an advertisement on backpage.com and agreed to engage in sexual activity in exchange for money. T.J. admitted to Detective Brown that she personally posted the advertisement on backpage.com, using her cell phone. Detective Brown observed pictures of provocatively-posed, young females on T.J.'s phone. Further, T.J. explained to Detective Brown how she would post the same "Jaimie" advertisement with different pictures, depending on which females were available to work on a given day. T.J. claimed responsibility for the services offered on the website and admitted that she and her female companions would split the money they received for engaging in sexual activity with the people who responded to the advertisement. Given all of the foregoing, we cannot conclude that T.J.'s adjudication of delinquency for having committed the offense of promoting prostitution was based on insufficient evidence. T.J.'s second assignment of error is overruled.

III.

{¶28} T.J.'s assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

 

JENNIFER HENSAL
FOR THE COURT

 

MOORE, J.
CONCURS.

CARR, J.
DISSENTING.

{¶29} I respectfully dissent. I would conclude that the juvenile court erred by allowing the State to amend the complaint after commencement of the adjudicatory hearing without agreement of the parties, because the amendment changed the identity of the offense. Juv.R. 22(B).

{¶30} Both Juv.R. 10(B)(1) and R.C. 2152.021(A)(1) require that a complaint alleging a child to be delinquent shall contain a recitation of the particular facts on which the alleged

violation is based. The majority relies on this Court's prior opinion in *In re G.E.S.*, 9th Dist. Summit No. 23963, 2008-Ohio-2671, ¶ 15, for the proposition that the delinquency complaint "need not specify the exact numerical designation of the statutory subsection under which the State intends to proceed so long as a reasonable, ordinary person would understand the charges against him, based on the language in the complaint." In *G.E.S.*, we concluded that the complaint apprised the juvenile of the identity of the alleged violation (sexual battery) notwithstanding the absence of the precise statutory subsection because only one of the twelve possible subsections contained the word "impaired" and that word was recited in the facts in the complaint. *Id.* at ¶ 16-17.

{¶31} In this case, the complaint purported to charge T.J. with promoting prostitution pursuant to R.C. 2907.22. There are four possible subsections which support a charge for promoting prostitution, and none was referenced by number in the complaint. Unlike *G.E.S.*, where that complaint recited language clearly specific to one of the twelve possible subsections, the complaint in this case did not recite facts implicating the elements of any provision of R.C. 2907.22. Instead, the recitation of facts supported a charge of solicitation pursuant to R.C. 2907.24.

{¶32} It is clear that inclusion of an inexact numerical designation of the statute and an offense level are not alone sufficient to apprise a juvenile of the identity of the violation with which he has been charged. Both the juvenile rules and statutory authority require more, specifically a recitation of particular facts which clarify the violation to a reasonable, ordinary person. Because the complaint effectively identified a charge of solicitation, it was error for the trial court to allow the State to amend the complaint to recite facts pertinent to a charge of promoting prostitution as such amendment changed the identity of the offense. Accordingly, I

would sustain T.J.'s first assignment of error and remand the matter with direction that the trial court dismiss the complaint purporting to allege a charge of promoting prostitution.  I would then decline to address the second assignment of error as moot.

APPEARANCES:

CEDRIC COLVIN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.