[Cite as *In re A.B.*, 2023-Ohio-1138.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE A.B. | : | |
| | : | No. 111744 |
| A Minor Child | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 6, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL21107028

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Dominic Neville, Assistant Prosecuting
Attorney, *for appellee.*

Rachel A. Kopec, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant A.B. appeals from his adjudication of delinquency on four counts of rape. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On August 17, 2021, A.B., d.o.b. 9/17/2001, was charged with six counts of rape in violation of R.C. 2907.02(A)(1)(b). Counts 1 through 4 involved cunnilingus and fellatio. Counts 5 and 6 involved anal and vaginal penetration. All

counts had furthermore specifications of force. These charges arose from incidents that allegedly took place in August 2019. When these incidents took place, the victim, then eight years old, was living in a house with multiple people, including A.B., then 17 years old.

{¶ 3} The matter proceeded to trial on March 15, 2022.

{¶ 4} S.F. testified that she currently lived with her grandparents, but she had previously lived with relatives, including A.B., when she was seven or eight years old. S.F. testified that she was living in this house with relatives because her parents had problems with drugs. S.F. testified that while she was living in this house, A.B. would regularly touch her private parts. She testified that this generally happened at night, and sometimes happened in his room — a downstairs closet — and sometimes happened on the stairs. S.F. testified that A.B. would pull their pants down and "he sucked on my pee-pee or I would suck on his." S.F. testified that A.B. told her not to tell anyone that this was happening. Finally, S.F. testified that she did not tell anyone until months later, when she told her grandmother, D.M.

{¶ 5} D.M. testified that in fall 2019, S.F.'s mother had signed over custody of S.F. and her brother to S.F.'s grandfather, so D.M. and S.F.'s grandfather went to a house in Cleveland, Ohio, to pick up S.F. and her brother.

{¶ 6} D.M. testified that at some point in the next year, S.F. told her that she had been sexually abused by A.B. D.M. subsequently went to the authorities, at which point D.M. and S.F.'s brother gave statements to the police.

{¶ 7} Cleveland police detective Dustin Vowell ("Vowell") testified that he received this case on September 17, 2020. Vowell testified a Division of Children and Family Services ("DCFS") social worker interviewed S.F. on September 30, 2020, and he attended that interview. Vowell also observed the DCFS social worker interview S.F.'s brother. Following the interview, Vowell determined that the incidents S.F. described took place at a house on Holmden Avenue in Cleveland, Ohio. Subsequently, Vowell identified A.B. and interviewed him. Finally, Vowell testified that he interviewed D.M.

{¶ 8} Following the aforementioned testimony, A.B.'s counsel made a motion for acquittal. The court granted the motion with respect to Counts 5 and 6 and denied the motion with respect to Counts 1 through 4.

{¶ 9} A.B. then testified in his own defense. A.B. testified that between 2015 and 2021, he lived with relatives on Holmden Avenue because his parents were drug addicts. A.B. testified that in the summer of 2019, 13 other people were living in the house with him. A.B. testified that he slept on an air mattress in a closet adjacent to the living room. A.B. testified that sometimes S.F. would sit on his lap and watch him play video games with her brother. He denied sexually abusing S.F. at any time.

{¶ 10} A.B.'s counsel renewed his motion for acquittal, and the court denied the motion. The court adjudicated A.B. delinquent as to Counts 1 through 4. This adjudication was journalized on March 31, 2022.

{¶ 11} On June 1, 2022, the court held a dispositional hearing. The investigative probation officer addressed the court with respect to A.B.'s sex offender assessment. The investigative probation officer recommended that the court require A.B. to participate in sex offender counseling services through Ohio Guidestone. The assistant prosecuting attorney recommended that the court classify A.B. as a Tier III sex offender and commit him to the Department of Youth Services ("DYS") until he turns 21. Defense counsel and A.B. also addressed the court.

{¶ 12} The court committed A.B. to the legal custody of DYS for institutionalization in a secure facility for a minimum period of 12 months and a maximum period not to exceed his attainment of the age of 21.

{¶ 13} On July 1, 2022, A.B. filed a notice of appeal. A.B. presents two assignments of error for our review:

> I. The trial court erred as a matter of law in finding the appellant delinquent when there was not sufficient evidence to support the convictions.

> II. The manifest weight of the evidence did not support the convictions.

**Legal Analysis**

{¶ 14} A.B. contends that the evidence presented at trial was not sufficient to support an adjudication of delinquency. He further argues that the adjudication was against the manifest weight of the evidence. We disagree.

{¶ 15} A juvenile court may adjudicate a juvenile to be a delinquent child when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult.

R.C. 2151.35(A); Juv.R. 29(E)(4); *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, ¶ 26; *In re Williams*, 3d Dist. Marion No. 9-10-64, 2011-Ohio-4338, ¶ 18. "[D]ue to the 'inherently criminal aspects' of delinquency proceedings," claims involving the sufficiency of the evidence and the manifest weight of the evidence in delinquency appeals are subject to the same standards of review applicable to criminal convictions. *In re T.J.*, 9th Dist. Summit No. 27269, 2014-Ohio-4919, ¶ 19, quoting *In re R.D.U.*, 9th Dist. Summit No. 24225, 2008-Ohio-6131, ¶ 6; *In re R.S.* at ¶ 26, citing *In re Watson*, 47 Ohio St.3d 86, 91, 548 N.E.2d 210 (1989); *see also In re S.H.*, 8th Dist. Cuyahoga No. 100529, 2014-Ohio-2770, ¶ 17, 25.

## I. Sufficiency of the Evidence

{¶ 16} In his first assignment of error, A.B. argues that there was not sufficient evidence to support an adjudication of delinquency. A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386. We must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We do not assess whether the state's evidence

is to be believed; we assess whether the evidence admitted at trial, if believed, supported the adjudication. *Thompkins* at 390 (Cook, J., concurring).

{¶ 17} In other words, we assume the state's witnesses testified truthfully and determine whether that testimony, along with any other evidence presented, satisfies each element of the offense. *In re D.R.S.*, 8th Dist. Cuyahoga No. 103584, 2016-Ohio-3262, ¶ 23. The elements of an offense may be proven by direct evidence, circumstantial evidence or both. *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25, citing *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). "Direct evidence exists when 'a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish.'" *Wells* at ¶ 25, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence is "evidence that requires 'the drawing of inferences that are reasonably permitted by the evidence.'" *Wells* at ¶ 25, quoting *Cassano* at ¶ 13; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind."). Circumstantial evidence and direct evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12.

{¶ 18} The juvenile court found A.B. delinquent of rape in violation of R.C. 2907.02(A)(1)(b), which provides in relevant part that "[n]o person shall

engage in sexual conduct with another who is not the spouse of the offender * * * when * * * the other person is less than thirteen years of age, whether or not the offender knows the age of the other person." "Sexual conduct" includes fellatio and cunnilingus. R.C. 2907.01(A).

{¶ 19} A.B. argues that the evidence was insufficient because S.F. testified that the alleged abuse happened about 30 times, she could not say exactly when the incidents occurred, and she could not describe what occurred using anatomically correct terminology. These arguments are unpersuasive.

{¶ 20} It is axiomatic that in cases involving sexual misconduct with a young child, precise times and dates of the conduct or offenses often will not be determined. *In re C.C.*, 8th Dist. Cuyahoga Nos. 88320 and 88321, 2007-Ohio-2226, ¶ 23, citing *State v. Barnecut*, 44 Ohio App.3d 149, 542 N.E.2d 353 (5th Dist.1988). With respect to the timing of the incidents, S.F. testified that they occurred when she was living in a house with A.B. when she was in second grade. This testimony, together with testimony from A.B., D.M., and Vowell about the timing of the alleged incidents, is sufficient to establish a general time period during which the abuse occurred. Moreover, while the complaint states that the conduct occurred on or about August 1, 2019, to August 31, 2019, the date of the offense is not an essential element of the offense requiring proof beyond a reasonable doubt. *State v. Sellards*, 17 Ohio St.3d 169, 478 N.E.2d 781 (1985).

{¶ 21} With respect to S.F.'s testimony about the conduct itself, A.B. is correct that S.F., who was eight years old at the time of the abuse and ten years old

at the time of trial, did not explicitly state that A.B. inserted his tongue into her vagina, or that he inserted his penis into her mouth. However, A.B. cites no authority stating that such language is required. S.F. testified that A.B. pulled his pants down so that she could suck on his "pee-pee," that he would pull her pants down so that he could suck on her "pee-pee," and that she felt "it" going in her mouth. S.F. went on to describe the physical differences between her genitalia and A.B.'s.

{¶ 22} All of this testimony is sufficient to establish that A.B. engaged in fellatio and cunnilingus with S.F. "'[T]he act of cunnilingus is completed by the placing of one's mouth on the female's genitals.'" *State v. Rucker*, 2020-Ohio-2715, 154 N.E.3d 350, ¶ 10 (8th Dist.), quoting *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 86. Penetration is not required for cunnilingus. *Id*. Further, this court has specifically found that there was sufficient evidence to sustain a rape conviction where a child victim testified using "pee pee" instead of the word "penis." *In re C.C.*, 8th Dist. Cuyahoga Nos. 88320 and 88321, 2007-Ohio-2226. Any rational trier of fact could have found that the essential elements of rape were satisfied by the evidence presented in this case. Therefore, A.B.'s first assignment of error is overruled.

## II. Manifest Weight

{¶ 23} In his second assignment of error, A.B. argues that his adjudication of delinquency was against the manifest weight of the evidence. Specifically, in addition to restating the arguments in his first assignment of error, A.B. argues that

because the abuse in this case allegedly took place in a small, crowded house, and no one else was able to provide any evidence to corroborate S.F.'s allegations, his adjudication of delinquency was against the manifest weight of the evidence.

{¶ 24} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. In determining whether a delinquency adjudication is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence the juvenile court clearly lost its way and created such a manifest miscarriage of justice that the adjudication must be reversed. *In re R.S.*, 8th Dist. Cuyahoga No. 99562, 2013-Ohio-5576, at ¶ 27, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting this review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Reversal on manifest-weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin*, *supra*.

{¶ 25} We are unpersuaded by A.B.'s arguments. Although S.F. was the only person who testified specifically about the sexual abuse, A.B. points to nothing that

would support a conclusion that the evidence in this case weighs heavily against his adjudication of delinquency. The juvenile court was in the best position to determine the credibility of both S.F. and A.B. Moreover, our review of the record shows that S.F. began her testimony by describing the difference between truth and lies and was able to provide a consistent version of events. This is not a case in which the juvenile court clearly lost its way and created a manifest miscarriage of justice. For these reasons, A.B.'s second assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR